540 S.E.2d 94

**Aaron Earl HINTON, Respondent,**

v.

**DESIGNER ENSEMBLES, INC., Petitioner.**

**No. 25207.**

Supreme Court of South Carolina.

Heard Oct. 5, 2000.

Decided Nov. 6, 2000.

Randall S. Hiller, of Greenville, for petitioner.

Eddie R. Harbin, of Greenville, for respondent.

BURNETT, Justice:

Respondent Hinton (Hinton) brought this retaliatory discharge action against Petitioner Designer Ensembles, Inc., (Designer) alleging Designer terminated his employment because he filed a workers' compensation claim. Hinton claimed his discharge was in violation of South Carolina Code Ann. § 41–1–80 (Supp.1999). The trial court found Designer terminated Hinton in violation of the statute, awarded Hinton lost wages, and ordered Hinton's reinstatement. The Court of Appeals affirmed the retaliation finding and lost wages award,

but reversed the reinstatement.[1] *Hinton v. Designer Ensembles, Inc.*, 335 S.C. 305, 516 S.E.2d 665 (Ct.App.1999). The Court granted Designer a writ of certiorari to review the Court of Appeals' decision. We reverse.

## FACTS

Designer employed Hinton as a shipping supervisor in December 1993. As a supervisor, part of Hinton's job was to enforce the company's policies. One of the policies provided an employee could be terminated if he was absent from work for five consecutive days without providing Designer with a written doctor's excuse.

Prior to August 2, 1994, Hinton had been neither absent from work nor tardy and he had never been "written up." On August 2, Hinton sustained a work-related injury to his back.

As a result of the accident, Hinton was x-rayed at the hospital emergency room then referred to Dr. Wallace. Dr. Wallace treated Hinton for pain and sent him to a therapist. When the therapy failed to provide relief, Dr. Wallace referred Hinton to Dr. Kanar.

Dr. Kanar treated Hinton from August 22 through September 13, 1994. He ordered a bone scan and treated Hinton with steroid injections. After Hinton's attempt to return to work in a limited capacity failed due to chronic back pain, Dr. Kanar referred Hinton to Dr. Kopera. While under Dr. Kanar's care, Hinton submitted a written doctor's excuse to Designer.

Through Dr. Kopera, Hinton attended intensive physical therapy sessions during October 1994. On October 28, 1994, Dr. Kopera released Hinton to return to work with restrictions on lifting, sitting, and standing. Dr. Kopera spoke with Marie Sitter, Designer's personnel manager, about the release and restrictions. Thereafter, Hinton spoke with Sitter and Facility Manager Joe Nettles. Nettles stated Designer wanted Hinton to return to work so it could "use Hinton's brain." Both Sitter and Nettles stated Designer would accommodate the doctor's restrictions, including permitting Hinton to lie down, if necessary.

---

1. Hinton did not appeal this holding.

Hinton returned to work on Tuesday, November 1, 1994, and worked a full shift, but told his manager, Carter Mahaffey, he was in pain. He worked a few hours on Wednesday, November 2, before reporting he was leaving due to pain. Hinton went to the emergency room; he was given a written doctor's excuse for that day's absence and instructed to see Dr. Kopera.

Hinton saw Dr. Kopera. The doctor's November 1, 1994, written report states he was unable to explain Hinton's increased back pain. The report further states "[Hinton] reports having difficulty performing his work duties with the previous (sic) outlined restrictions. I have discussed the patient's case with his employer and they will accommodate him in any fashion. Specifically, he will not be asked to do any task that causes him discomfort." [2] Dr. Kopera scheduled a November 15, 1994, appointment for Hinton with an orthopedic specialist, Dr. Reid. Hinton testified Dr. Kopera instructed him to wait until after his appointment with Dr. Reid before returning to work.

On November 3 and 4, Hinton telephoned Mahaffey and said he was in too much pain to work. On each day, Mahaffey informed Hinton his absence was unexcused.. Hinton did not telephone Mahaffey on Saturday, November 5, even though it was a scheduled workday. Hinton did not telephone Mahaffey on Monday, November 7. On Tuesday, November 8, and Wednesday, November 9, Hinton telephoned Mahaffey and said he would not be able to work due to pain. Mahaffey informed Hinton the absences were unexcused. On November 10, Hinton telephoned Designer; he left a message for Mahaffey. On November 11, Designer terminated Hinton.

Four days later, Hinton attended his scheduled appointment with Dr. Reid. Dr. Reid's report of November 15 states "will allow [Hinton] to continue work without restriction, as he appears to have light duties provided with his job." Dr. Reid ordered a magnetic resonance image; the test revealed a herniated disc as the source of Hinton's discomfort. Dr.

---

2. The record is inconsistent as to the date Hinton returned to work, the date on which Hinton went to the emergency room, and the date on which Dr. Kopera last saw Hinton. There is no dispute, however, Hinton was absent from work for five consecutive days without providing a written doctor's excuse.

Reid's report of November 30 states Hinton "should be able to function under the limitations recommended by Dr. Kopera."

Hinton agreed Sitter reminded him on September 28, 1994, of Designer's policy requiring a written doctor's excuse. Hinton further agreed that during the same conversation Sitter repeatedly stated she wanted him to get better and return to work. On October 5, 1994, Hinton spoke with Nettles who stated it was imperative Hinton obtain another written doctor's excuse because he was violating company policy. As a result, Hinton submitted two written notes from Dr. Kopera excusing him from work for the month of October 1994.

Hinton conceded he did not have a written note from a doctor excusing him from work from November 2 through 11. He testified he believed Dr. Kopera verbally told Sitter he was unable to work during this period.

Sitter testified she had conversations with Hinton's treating physicians. She spoke with Dr. Kopera numerous times. She also spoke with the workers' compensation claim adjustor about Hinton's treatment. Sitter did not recall speaking with anyone about Dr. Kopera referring Hinton to Dr. Reid. She denied Hinton was terminated because he filed a workers' compensation claim.

After Hinton's August 2nd accident, Designer paid Hinton his salary for thirty days. Thereafter, Hinton sought workers' compensation benefits. Designer admitted the injury and paid Hinton medical benefits and temporary total disability benefits through January 20, 1995, when Hinton reached maximum medical improvement. Hinton was given a 14% permanent partial disability rating to his spine.

### ISSUE

Did the Court of Appeals err by holding Hinton met his burden of establishing Designer's reason for terminating him (violation of company's written absentee policy) was pretextual?

### DISCUSSION

A retaliatory discharge claim is an equity action tried without a jury. *Johnson v. J.P. Stevens & Co., Inc.*, 308

S.C. 116, 417 S.E.2d 527 (1992). In reviewing a retaliatory discharge claim, the appellate court may find facts in accordance with its view of the preponderance of the evidence. *Wallace v. Milliken & Co.*, 305 S.C. 118, 406 S.E.2d 358 (1991).

In relevant part, § 41–1–80 provides:

No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law (Title 42 of the 1976 Code), or has testified or is about to testify in any such proceeding. ... The burden of proof is upon the employee....

Any employer shall have as an affirmative defense to this section the following: ... violating specific written company policy for which the action is a stated remedy of the violation.

 In order to prove a claim under § 41–1–80, a plaintiff must establish three elements: 1) institution of workers' compensation proceedings, 2) discharge or demotion, and 3) a causal connection between the first two elements. *Hines v. United Parcel Service, Inc.*, 736 F.Supp. 675 (D.S.C.1990). The appropriate test of causation under § 41–1–80 is the "determinative factor" test. *Wallace v. Milliken & Co., supra.* The determinative factor test requires the employee establish that he would not have been discharged "but for" the filing of the workers' compensation claim. *Id.*

 Section 41–1–80 provides the employer with affirmative defenses, including the violation of specific written company policy. While the employer has the burden of proving its affirmative defenses, the employer does not have the burden of establishing the affirmative defenses are causally related to the discharge. *Horn v. Davis Elec. Constructors, Inc.*, 307 S.C. 559, 416 S.E.2d 634 (1992). "[T]he ultimate burden is, throughout, upon the employee." *Wallace*, 305 at 122, 406 S.E.2d at 360.

The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remain *at all times with the employee. The burden of persuasion never shifts and the employee bears the burden of persuasion that the reason*

*given for termination was pretextual* .... The employee
may succeed in this, either directly by persuading the court
that the discharge was significantly motivated by retaliation
for her exercise of statutory rights, or indirectly by showing
that the employer's proffered explanation is unworthy of
credence.

*Id.* (italic in original; underline supplied) *citing Buckner v.
General Motors Corp.,* 760 P.2d 803, 807 (Okla.1988).

█ If the employer articulates a legitimate, nonretaliatory
reason for the termination, the proximity in time between the
work-related injury and the termination is not sufficient evi-
dence to carry the employee's burden of proving a causal
connection. *Cf. Johnson v. J.P. Stevens & Co., Inc.,* 308 S.C.
at 118, 417 S.E.2d at 529 ("[i]n light of the conceded legiti-
mate, nonretaliatory motives for the termination, [the] proxim-
ity in time does not meet the employee's burden of proof.");
*Marr v. City of Columbia,* 307 S.C. 545, 416 S.E.2d 615 (1992)
(rejecting retaliatory discharge claim where only evidence
suggesting retaliatory motive for discharge was temporal
proximity of claim to discharge) *with Horn v. Davis Electrical
Constructors, Inc.,* 307 S.C. 559, 563, 416 S.E.2d 634, 636
(1992) (where temporal proximity of injury and discharge
existed, "in addition to other retaliatory evidence in the record
as well as [employer's] admission that evidence of retaliation
existed," plaintiff established termination in violation of stat-
ute).

The Court of Appeals concluded Hinton established by a
preponderance of the evidence that Designer's reason for
terminating him, violation of a specific written company policy,
was pretextual. *Hinton v. Designer Ensembles, Inc., supra.*
It found that, although Hinton did not provide a written
doctor's excuse for his absences in November 1994, Designer
nonetheless knew or should have known about Hinton's physi-
cal condition through discussions with Hinton's doctors and its
workers' compensation carrier and, therefore, Hinton "sub-
stantially complied with Designer's absentee policy."[3] As a

---

**3.** The Court of Appeals adopted the trial court's unstated conclusion
Sitter was not a credible witness. *See Smothers v. Richland Mem'l
Hosp.,* 328 S.C. 566, 493 S.E.2d 107 (Ct.App.1997) (broad scope of
review in equity cases does not require appellate court to disregard

result, the Court of Appeals concluded "Designer's proffered reasons were not legitimate" and Hinton would not have been terminated "but for" filing a workers' compensation claim. *Id.* at 316, 516 S.E.2d at 671.

Initially, the record disputes Hinton's claim that, after his failed attempt to return to work in late October, Dr. Kopera told him not to return to work until after his November 15th appointment with Dr. Reid and that Dr. Kopera informed Designer accordingly. Dr. Kopera's written report of November 1, 1994, indicates he expected Hinton to return to work and that Designer would accommodate Hinton's limitations.

Assuming, however, that Dr. Kopera instructed Hinton to wait until his appointment with Dr. Reid before returning to work and Designer knew this recommendation through verbal communication with the doctor, it was error for the Court of Appeals to find Hinton "substantially complied" with Designer's absentee policy. Hinton admitted that, since his injury, Designer repeatedly instructed him to submit written doctor's excuses and he complied, even though Designer knew through verbal communication with Hinton's treating physicians that Hinton was unable to work. Hinton was fully aware of Designer's absentee policy and had been warned that the company would enforce the policy. It was inappropriate for the Court of Appeals to second guess the imposition of Designer's absentee policy where the company had consistently applied the policy throughout Hinton's convalescence. *Compare Wallace v. Milliken & Co., supra* (Court found company's reason for terminating employee, failure to follow safety standards, pretextual where company had not trained employee on use of machine and the safety procedures for cleaning of machine were vague and ambiguous).

■ We conclude Hinton did not establish by a preponderance of the evidence that Designer's reason for terminating him was pretextual and, "but for" filing a workers' compensation claim he would not have been terminated. Hinton admit-

---

findings of trial judge who is in better position to evaluate witness credibility). In essence, the Court of Appeals found 1) Dr. Kopera advised Hinton not to return to work until after his appointment with Dr. Reid and 2) Sitter must have spoken with Dr. Kopera after he referred Hinton to Dr. Reid.

ted Designer officials wanted him to return to work and were willing to accommodate his physical limitations. Hinton conceded, throughout September and October company representatives repeatedly instructed him to provide a written doctor's excuse to cover his absences and he complied accordingly. Assuming Dr. Kopera verbally informed Designer Hinton should not return to work until after his appointment with Dr. Reid, Designer nonetheless directed Hinton to provide a written doctor's excuse; Hinton could have, but did not, obtain the written excuse from Dr. Kopera. After seven days passed without submission of a written doctor's excuse, Hinton was terminated. The temporal proximity of Hinton's termination, immediately after he failed to submit a written doctor's excuse in compliance with written company policy, is contrary to Hinton's claim he was terminated for filing a workers' compensation claim. *See id.* (finding if employer was motivated by employee's failure to follow safety procedures as reason to discharge employee, it would have immediately terminated employee after he failed to follow the safety procedures).

The Court of Appeals relied on *Lattie v. SHS Enterprises, Inc.,* 300 S.C. 417, 389 S.E.2d 300 (Ct.App.1990), where the appellate court concluded the employee established a *prima facie* case of retaliatory discharge through proof of his good employment record and the timing of his workers' compensation proceeding and termination. The issue in *Lattie* was whether the trial court properly granted summary judgment to the employer. Viewing the evidence in the light most favorable to the employee, the non-moving party, the appellate court reversed. As noted in Judge Goolsby's dissent, *Lattie* was decided under a different procedural posture and is inapplicable to the current case.

The present case is, however, similar to *Johnson v. J.P. Stevens & Co., supra.* In *Johnson,* the company advised Johnson, a new probationary employee, it had a written policy that probationary employees who miss more than four days will most likely be terminated. While on probation, Johnson sustained a work-related back injury. The treating physician released Johnson to return to work. Johnson did not return to work but, instead, saw a second physician about blackouts. The second physician advised Johnson not to return to work. Johnson presented his employer with a work excuse from the

second physician. He was terminated the next day. The termination notice specified excessive absenteeism and blackout spells as reasons for the termination. Johnson had been absent nine days. This Court found the stated reasons for termination permissible.

In *Johnson* and the present case, both employees admittedly violated their employers' written absentee policies. Other than the fact that their terminations occurred in temporal proximity with their work-related injuries, they offered no evidence their employers' reasons for termination were pretextual or that, but for the filing of workers' compensation claims, they would not have been discharged.

Accordingly, the Court of Appeals' decision is reversed.

**REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.