Doug FOTIA Plaintiff,

v.

**PALMETTO BEHAVIORAL HEALTH, Defendant.**

No. 2:03–3775–23.

United States District Court,
D. South Carolina,
Charleston Division.

April 14, 2004.

Allan Riley Holmes, Michele Elayne Bateman, Gibbs and Holmes, Charleston, SC, for Plaintiff.

Mary Elizabeth Crum, McNair Law Firm, Columbia, SC, Michael A. Scardato, McNair Law Firm, Charleston, SC, for Defendant.

## ORDER

DUFFY, District Judge.

This matter is before the court upon Defendant Palmetto Behavioral Health's ("Palmetto Behavioral") Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) and (6). For the reasons set forth herein, Defendant's motion is denied.

## I. BACKGROUND

Plaintiff Doug Fotia ("Fotia"), a licensed clinical social worker, was hired by Defendant Palmetto Health as an emergency assessment worker on or about October 15, 2001. (Am.Comp.¶ 6). On August 19, 2002, Plaintiff assessed a suicidal unfunded patient and concluded that the patient required emergency hospitalization. (Am. Comp.¶ 8). The patient's physical condition was stabilized at Summerville Hospital, but that hospital was not equipped to deal with the patient's psychiatric condition. *Id.* A physician certified the transfer of the patient, and Fotia sought to transfer the patient to Palmetto Health, the nearest participating hospital with an open bed and specialized psychiatric capabilities and facilities. *Id.*[1]

Plaintiff informed Palmetto Health that his patient needed hospitalization, and the

---

1. The physician certified the transfer of the patient pursuant to 1395dd(c)(1) of EMTALA. By "participating hospital," the court refers to another hospital participating in the EMTALA program.

Palmetto Needs Assessment department informed him that Palmetto Health had an available bed and was suitable for the patient. (Comp.¶ 10). However, Plaintiff claims, Palmetto Health's administrator on-call, Shirely Trainor–Thomas ("Thomas"), informed Plaintiff that Palmetto Health had taken their share of unfunded patients lately, and that Plaintiff should take the patient to the Medical University of South Carolina ("MUSC"). (Comp. ¶ 11). Plaintiff did so, and explained that he was bringing the patient to MUSC because Thomas had told him that Palmetto had taken its share of unfunded patients. Plaintiff suggests that this constituted the reporting of a violation of the Emergency Medical Treatment and Active Labor Act (EMTALA). (Comp.¶ 12).

On August 26, 2002, one week after this incident, Plaintiff was terminated from his employment with Defendant. (Comp.¶ 13). Defendant told Plaintiff that he was being terminated because it had received multiple complaints from doctors and administrators about him. *Id.* Plaintiff contends, however, that he had never been informed of any complaints regarding his work, and that Defendant's proffered reason for terminating him was a pretext for retaliation. (Comp.¶ ¶ 13, 14).

Plaintiff alleges that the preceding actions give rise to violations of EMTALA. Plaintiff also asserts a state law wrongful discharge claim. Plaintiff seeks actual and exemplary damages, as well as the equitable remedies of back pay and reinstatement, or if reinstatement is impractical, front pay. (Comp.¶ 24).

## II. STANDARD OF REVIEW

■■■ A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Plaintiff cannot prove any set of facts in support of his

claims that entitles him to relief. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972).

■■■ Similarly, when evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.,* 945 F.2d 765, 768 (4th Cir.1991).

## III. DISCUSSION

As a threshold matter, Plaintiff's Amended Complaint is ambiguous as to precisely which claims he seeks to raise. The court has difficulty ascertaining whether Plaintiff asserts only a violation of EMTALA in the alleged retaliation he suffered, or whether he also attempts to assert statutory violations of EMTALA on behalf of the patient who was refused access and treatment at Palmetto.[2] To the extent that Plaintiff attempts to bring the

---

**2.** For example, in Plaintiff's amended com- plaint, he cites the following actions as viola-

latter claims on behalf of the patient, there would be significant hurdles that Plaintiff may not be able to overcome. Thus, the court reads Plaintiff's complaint as asserting only a violation of EMTALA for the retaliation allegedly taken against him.

## A. Private Right of Action for Retaliation

■ Defendant's first contention is that there is no private cause of action for an alleged whistleblower under EMTALA. Plaintiff counters that the plain language of EMTALA allows his suit.

The statutory language of EMTALA is clear and straightforward: the civil enforcement provisions of the statute create a private right of action for any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of the statute. *See* 42 U.S.C. § 1395dd (d)(2)(A). The statute provides:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section, may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

*Id.* EMTALA also contains a section entitled "Whistleblower protections" which prohibits hospitals from taking adverse action against hospital employees who report

a violation of EMTALA. *See* 42 U.S.C. § 1395dd (i).[3]

■ First, Defendant appears to suggest that because EMTALA does not give individuals the right to bring a civil action for financial losses (but only expressly gives this right to medical facilities), Plaintiff does not have a private right of action as a whistleblower. Defendant argues that Plaintiff seeks to recover financial losses, and thus no private right of action is warranted. Defendant's argument is unavailing for several reasons. First, the express language of the statute allows "any individual who suffers personal harm" to bring a civil action for "those damages available for personal injury under the law of the State in which the hospital is located." 42 U.S.C. § 1395dd (d)(2)(A). Plaintiff does not seek to recover only financial losses, but also damages for humiliation, pain and suffering, and embarrassment. (Am. Comp. at ¶ 20). Additionally, the court does not agree that, because the act affirmatively grants medical facilities the right to recover financial losses, it impliedly bars whistleblowers from recovering financial losses when they assert a retaliation claim. Such a result would seem to contradict the very purpose of having a whistleblower provision.[4]

■ Defendant next suggests that because the Fourth Circuit has held that EMTALA does not provide a private right of action against an individual physician, *see, e.g., Baber v. Hospital Corp. of*

---

tions of EMTALA: 1) Defendant's refusal to provide the necessary examination and treatment for stabilizing the patient's emergency medical condition; 2) Defendant's unlawful discrimination against the patient by refusing to accept the appropriate transfer of the patient; and 3) Defendant's termination of Plaintiff's employment because of his reporting of the alleged EMTALA violations.

3. This section provides, in pertinent part: "A participating hospital may not penalize or

take adverse action against … any hospital employee because the employee reports a violation of a requirement of this section." 42 U.S.C. § 1395dd (i).

4. The whistleblower provision is the central focus of Defendant's motion. Unfortunately, the court has not been able to identify any decisions construing the scope or meaning of the whistleblower provision. Thus, this appears to be a case of first impression.

*Am.,* 977 F.2d 872, 880 (4th Cir.1992), "a whistleblower does not have a private right of action against the hospital." (Def. Mem. at 7). The court is perplexed at how Defendant reads *Baber* to imply such a result. Defendant is correct that *Baber* considered whether patients or their representatives have a private right of action against physicians. Also as Defendant suggests, the Fourth Circuit answered that question in the negative. However, there is no way to construe *Baber* to mean that a whistleblower does not have a private right of action against the hospital, or that "Congress left the enforcement of these issues to the OIG in the administrative context and not to private litigants." (Def. Mem. at 7). In fact, in *Baber* the Fourth Circuit explicitly noted that individuals were proper plaintiffs in suits against hospitals. *Baber,* 977 F.2d at 877 ("... the statute clearly allows a patient to bring a civil suit for damages for an EMTALA violation against a participating hospital."). As such, *Baber* is more properly construed as limiting the proper defendants in an EMTALA action, but does not elaborate on which individuals may be proper EMTALA plaintiffs.

Given the express language of 42 U.S.C. § 1395dd (i) and § 1395dd (d)(2)(A), it appears that the intent of the statute is to allow private individuals harmed by EMTALA violations to sue the hospitals that caused the harm. Section 1395 dd (d)(2)(A) creates an explicit right of action for harmed individuals, and § 1395dd (i) establishes that whistleblowers are not to be "penalized" or subjected to "adverse action." Thus, as a whistleblower alleging retaliation, the very gravamen of Plaintiff's complaint is that he has been harmed by a violation of EMTALA. Under the plain language of § 1395dd (i), Plaintiff should therefore have a right of action.

Furthermore, even if it were necessary to consider whether there was an implied right of action for whistleblowers, in other contexts, courts have implied rights of action when an individual alleges retaliation. *See, e.g., Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 236, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (holding that a prohibition on discrimination should be judicially construed to include an implicit and actionable prohibition on retaliation against those who oppose the prohibited discrimination); *Lowrey v. Texas A & M University System,* 117 F.3d 242, 254 (5th Cir. 1997) (the implication of a private right of action for retaliation serves the dual purposes of Title IX by creating an incentive for individuals to expose violations of Title IX and by protecting such whistleblowers from retaliation); *Fiedler v. Marumsco Chris. Sch.,* 631 F.2d 1144, 1149 n. 7 (4th Cir.1980) (holding that retaliation is a viable theory under 42 U.S.C.A. § 1981, which prohibits only intentional discrimination and makes no separate reference to retaliation). Thus, the court must reject Defendant's argument that there is no private right of action for retaliation under EMTALA.

**B. Personal Injury To Plaintiff From The Alleged Retaliation**

■ Defendant next argues that the court does not have subject matter jurisdiction over Plaintiff's claim for damages under EMTALA "since the Plaintiff has failed to suffer personal harm or injury." (Def. Mem. at 7).[5] Defendant cites the language of EMTALA providing that individuals suing for violations of the statute may "obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd (d)(2)(B).

---

5. The court construes this argument as essen- · tially one concerning Plaintiff's standing.

Defendant argues that "wrongful discharge is not a *personal injury* cognizable under tort law in South Carolina." (Def. Mem. at 8) (emphasis added). This is simply not the relevant inquiry. It is wholly unnecessary to determine whether wrongful discharge is a personal injury claim under South Carolina law. Instead, the statute directs the court to determine whether the Plaintiff is an "individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of [EMTALA]." 42 U.S.C. § 1395dd (d)(2)(B). Given that Plaintiff is complaining of retaliation from his reporting of an EMTALA violation, he is certainly an individual who has suffered personal harm.

■ After deciding this question, the court must then consider the type of damages Plaintiff is entitled to. As defined by the statute, Plaintiff is entitled only to "the damages available for personal injury under the law of the State in which the hospital is located." 42 U.S.C. § 1395dd (d)(2)(B). Instead of requiring the court to "convert" Plaintiff's EMTALA cause of action into an analogous state law claim, the statute simply specifies that the damages allowed for EMTALA violations are those damages available in personal injury claims in South Carolina. *See, e.g., Power v. Arlington Hospital Association,* 42 F.3d 851, 856 (4th Cir.1994). In other words, an EMTALA plaintiff need not bring a claim that is maintainable as a state law action, but is limited to the damages that the state allows for personal injury actions.[6]

## C. Plaintiff's Statement of a Violation of EMTALA

■ Defendant next argues that Plaintiff has failed to state a violation of EMTALA, and that his claim should therefore be dismissed under Fed. R. Civ. Pro. 12(b)(6). The court disagrees. The court again reiterates that it is not clear from the face of Plaintiff's complaint whether he merely intends to recover on his retaliation claim, or whether he also seeks recovery on the substantive violations of EMTALA he alleges. Nonetheless, given that Plaintiff's complaint at least appropriately alleges a violation of the whistleblower provision, the court cannot conclude that Plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *See, e.g., Mylan Labs., Inc.,* 7 F.3d at 1134. As for Defendant's contention that Plaintiff's claim fails because Plaintiff did not actually report a violation of EMTALA, the court also disagrees. Plaintiff has alleged sufficient facts to suggest that he may be able to establish that he reported the violation. *See Mylan Labs.,* 7 F.3d at 1134 (holding that in considering dismissal under Rule 12(b)(6), the court should accept the factual allegations in the complaint as true and afford the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations).[7]

---

**6.** Furthermore, even if the court were to "convert" Plaintiff's EMTALA claim into a state cause of action to determine whether there was a cognizable harm under South Carolina law, the court would not reach the result Defendant suggests. Under South Carolina law, "[w]here the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises." *Ludwick v. Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213, 216 (1985). As elaborated above, there is no need to consider whether a wrongful discharge claim is one involving personal injury.

**7.** To the extent that Defendant argues that Plaintiff has failed to state a claim for the other substantive violations of EMTALA, the court declines to consider this argument. First, as noted above, it is unclear whether Plaintiff attempts to recover for these violations or simply on his retaliation claim. While the other alleged EMTALA violations

### D. Worker's Compensation as the Exclusive Remedy

 Defendant next suggests that Plaintiff fails to state a claim upon which relief can be granted because "The South Carolina Workers' Compensation Statute provides the exclusive remedy for employees who sustain work related injury." (Def. Mem. at 12). That is correct, but of no import for the present dispute. First, the alleged injury did not occur within the scope of Plaintiff's employment with Palmetto Health. *See, e.g.,* S.C.Code Ann. § 42–1–160 (" 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment"); *Aughtry v. Abbeville County School District No. 60,* 332 S.C. 453, 504 S.E.2d 830, 833 (1998) ("For an injury to be compensable under the Workers' Compensation Act, it must be caused by an accident, and arise out of and in the course of employment").

 Simply put, it is well settled that the exclusivity provisions of workers' compensation do not bar a former employee's suit against an employer for retaliatory discharge. *See, e.g., Hinton v. Designer Ensembles, Inc.,* 343 S.C. 236, 540 S.E.2d 94 (2000); *Small v. Oneita Industries,* 318 S.C. 553, 459 S.E.2d 306, 307

(1995); *Johnson v. J.P. Stevens and Co., Inc.,* 308 S.C. 116, 417 S.E.2d 527 (1992); *Marr v. City of Columbia,* 307 S.C. 545, 416 S.E.2d 615 (1992).[8] To the extent that Defendant is suggesting that Plaintiff is barred from seeking recovery for emotional distress (Def. Mem. at 13), the court reads Plaintiff's complaint to suggest that this injury occurred as a result of the termination and is outside of the scope of employment.[9]

### E. Defendant's Remaining Arguments

Defendant raises additional arguments suggesting that Plaintiff has failed to state a claim under the court's federal supplemental jurisdiction, and that the court should not exercise jurisdiction over Plaintiff's state law wrongful discharge claim. All of Defendant's supplemental jurisdiction arguments hinge on the question of whether EMTALA provides for a private right of action for a whistleblower. As the court has already decided that issue, the court need not address Defendant's remaining arguments.

## IV. CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendant's Motion to

---

are mentioned in Plaintiff's complaint, Plaintiff would be required to mention these violations, and the reporting of them, to successfully state a claim for retaliation. If Plaintiff intends to recover for these violations independently, however, the court would have significant standing issues to resolve.

8. Although there are ample bases for rejecting Defendant's argument, the court additionally notes that the exclusivity provisions of South Carolina's Workers' Compensation law does not bar suits for claims for which the Act provides no remedy. *See, e.g., Peay v. U.S. Silica Co.,* 313 S.C. 91, 437 S.E.2d 64, 65

(1993); *Dockins v. Ingles Markets, Inc.,* 306 S.C. 287, 411 S.E.2d 437 (1991).

9. At no point in Plaintiff's Amended Complaint does he suggest that he suffered emotional distress, or any injuries, prior to the alleged wrongful termination. The court does not understand how Defendant reads Plaintiff's complaint to suggest that "[c]learly, the Plaintiff is alleging personal injury arising out of his employment with the Defendant," a conclusion all the more baffling given that Defendant "does not admit that Plaintiff is an employee . . . ." (Def. Mem. at 12).

Dismiss the Amended Complaint is DE-NIED.

**AND IT IS SO ORDERED.**