GARY RIESEN, APPELLANT, V. IRWIN INDUSTRIAL TOOL
COMPANY, FORMERLY KNOWN AS AMERICAN TOOL
COMPANIES, INC., APPELLEE.

717 N.W.2d 907

Filed July 21, 2006.   No. S-05-208.

Eric B. Brown, of Atwood, Holsten & Brown Law Firm, P.C., L.L.O., for appellant.

Bryan S. Hatch and Andrew W. Muller, of Stinson, Morrison & Hecker, L.L.P., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

HANNON, Judge, Retired.
## I. NATURE OF CASE
Gary Riesen brought suit against his former employer, Irwin Industrial Tool Company (Irwin Industrial), alleging he was fired in retaliation for filing a workers' compensation claim. The trial court granted summary judgment for Irwin Industrial, and Riesen appealed.

In this opinion, we conclude that Riesen met his burden of establishing a prima facie case of retaliatory discharge for filing a workers' compensation claim. We also conclude that Riesen's evidence, viewed in a light most favorable to Riesen, created a

genuine issue of fact as to whether the reason offered by Irwin Industrial for the termination of Riesen's employment was a pretext for an impermissible termination. Thus, we reverse the trial court's order of summary judgment and remand the cause for further proceedings.

## II. STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Johnson v. United States Fidelity & Guar. Co.*, 269 Neb. 731, 696 N.W.2d 431 (2005). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## III. FACTS

On October 9, 2000, an employment agency placed Riesen with Irwin Industrial as a temporary employee. On December 1, Riesen submitted an application for employment with Irwin Industrial. The form instructed applicants to list "all present and past employment, beginning with [their] most recent." The application provided three spaces on which applicants were to list their previous employers. Applicants were instructed to "[u]se a separate sheet of paper if necessary." Riesen listed three previous employers. The form also specified that by signing the application, the applicants certified that their answers were "true and complete to the best of [their] knowledge" and that they understood that "false information given in [their] application [could] result in discharge." On December 11, Irwin Industrial hired Riesen for a full-time position on its second shift.

On May 8, 2001, Riesen injured his right shoulder while working at Irwin Industrial. He filed a claim for workers' compensation benefits. His treating physician instructed him to avoid using his right arm at work.

On July 11, 2001, Riesen received a positive performance appraisal from Irwin Industrial, which assessed him as a "[g]ood"

employee, and he was given a 10-percent pay increase. On July 31, Riesen requested to transfer from second shift to first shift. His request was approved on August 9. Before Riesen accepted the shift change, Judy Brahm, an employee relations representative, advised him that the requested shift change would result in a reduction in pay. He was also advised that although his transfer was approved, Irwin Industrial could not immediately accommodate him on the first shift within his medical restrictions and, thus, he would be out of work until an appropriate position became available. Riesen accepted the shift change under those conditions.

Approximately 2 months after his initial accident, Riesen took an insurance form regarding his off-work status to Robert Summers, the manager of Irwin Industrial's human resources department. This form was required by an insurance provider as a precondition for making payments on Riesen's bank loans while he was disabled. Summers refused to sign the insurance form because, according to him, "[Riesen] was not totally disabled. He had restrictions, but was not disabled." In a meeting with Riesen and his wife concerning this issue, Summers allegedly told Riesen that he would not sign the form, that he had no work available for Riesen because of Riesen's one-arm restriction, and that "it would be a lot easier on all of [them] if [Riesen would] just quit." Summers admitted that he refused to sign the insurance form, but he denied making the other statements.

On August 23, 2001, Riesen's treating physician released him to return to work without restrictions, and Riesen did so. On December 13, Riesen received another positive performance evaluation at work.

At some point between August 20, 2001, and January 7, 2002, Riesen met with Summers and a human resources administrator in Summers' office to discuss Riesen's physical restrictions. After this meeting, Riesen went to a nearby human resources office to discuss insurance. Riesen claims that Summers thought Riesen had left the area and that he overheard Summers tell the administrator in the hallway: "[H]e expects me to believe that he's injured" and "the little son of a bitch is faking and he only did this to get his raise." Riesen believed Summers was referring

to him because he had just met with Summers concerning his injury and had recently received a raise. Riesen claims that when Summers became aware Riesen was still nearby, Summers became quiet and retreated to his office. Summers denied making such statements.

The record indicates that between August 23, 2001, and January 2, 2002, Riesen missed work on three different days due to his work-related injury sustained on May 8, 2001. On January 7, 2002, Riesen underwent surgery on his shoulder as a result of the same work-related injury. Following surgery, Riesen missed work for over a month, during which time he received temporary total disability benefits. He missed work on several occasions between February 11 and April 24 due to his work-related injury.

On February 2, 2002, Riesen received a 4-percent pay increase. On February 28, Riesen received another positive employment evaluation from Irwin Industrial, in which he was rated as a "[g]ood" employee. On February 16, Riesen was given a 9-percent pay increase, which was approved by Summers.

On April 28, 2002, Riesen informed Brahm in the human resources department that his physician had said another surgery on his shoulder was necessary. Brahm responded by telling Riesen, "[L]et's get her fixed, do whatever you can to get it fixed."

During the morning of April 30, 2002, Summers received Riesen's answers to interrogatories and requests for production of documents in an action Riesen had filed against Irwin Industrial in Workers' Compensation Court. After reviewing Riesen's answers, Summers reviewed Riesen's personnel file, including his employment application. Summers discovered that the employment history Riesen provided in his answers to interrogatories differed from the employment history he had provided on his job application.

Later that morning, Summers called Riesen into his office. Riesen claims Summers stated: " 'You finally messed up . . . you lied on your work comp application.' " Summers denies making this statement. Summers then fired Riesen. Riesen was told his employment had been terminated because he had falsified his employment application.

Following the termination of his employment, Riesen again had surgery on his shoulder. He continued to receive workers' compensation benefits through August 4, 2002.

On June 19, 2003, Riesen filed an amended complaint against Irwin Industrial in the district court for Saline County, which complaint alleged that he had been fired in retaliation for filing a workers' compensation claim and pursuing his rights under the Nebraska Workers' Compensation Act. Irwin Industrial moved for summary judgment, and after a hearing was held, the trial court sustained the summary judgment motion and dismissed Riesen's complaint. The court reasoned that Riesen's evidence had failed to establish that Irwin Industrial was motivated by retaliation or that the company's justification for termination of Riesen's employment was pretextual. Riesen appealed.

## IV. ASSIGNMENTS OF ERROR

Riesen asserts that the trial court erred in finding that he had failed to establish a prima facie case of retaliatory discharge and in sustaining Irwin Industrial's motion for summary judgment.

## V. ANALYSIS

The record indicates that Riesen was hired on an at-will basis. The general rule in Nebraska is that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason. *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003). Under the public policy exception to the at-will employment doctrine, however, an employee can claim damages for wrongful discharge when the motivation for the firing contravenes public policy. *Id.* In *Jackson*, this court recognized that the Nebraska Workers' Compensation Act presents a clear mandate of public policy which warrants application of the public policy exception to the at-will employment doctrine. Thus, an action for retaliatory discharge is allowed when an employee has been discharged for filing a workers' compensation claim. *Id.*

In this appeal, we are asked to determine whether dismissal of Riesen's retaliatory discharge claim was improper because the evidence, viewed in the light most favorable to Riesen, disclosed

a genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts.

## 1. Applicability of Burden-Shifting Analysis

In cases involving claims of employment discrimination, albeit not involving workers' compensation claims, this court has recognized the burden-shifting analysis which originated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See, e.g., *Billingsley v. BFM Liquor Mgmt.*, 264 Neb. 56, 645 N.W.2d 791 (2002) (age discrimination); *Father Flanagan's Boys' Home v. Agnew*, 256 Neb. 394, 590 N.W.2d 688 (1999) (gender discrimination); *Father Flanagan's Boys' Home v. Goerke*, 224 Neb. 731, 401 N.W.2d 461 (1987) (discrimination against person with disability); *Harris v. Misty Lounge, Inc.*, 220 Neb. 678, 371 N.W.2d 688 (1985) (retaliatory discharge for filing claim with Nebraska Equal Opportunity Commission); *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, 217 Neb. 289, 348 N.W.2d 846 (1984) (gender discrimination). This court has noted that as clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), " '*McDonnell Douglas Corp.* allocates the burden of production and the order for the presentation of the evidence; the ultimate burden of persuasion, however, rests on the plaintiff.' " *Billingsley*, 264 Neb. at 70, 645 N.W.2d at 803.

The following procedure is utilized under the three-tiered allocation of proof standard: First, the plaintiff has the burden of proving a prima facie case of discrimination. See *Goerke, supra*. Second, if the plaintiff succeeds in proving that prima facie case, the burden shifts to the defendant-employer to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection or discharge from employment. See *id*. This burden is a burden of production, not of persuasion. See *Lincoln County Sheriff's Office v. Horne*, 228 Neb. 473, 423 N.W.2d 412 (1988). The employer need only explain what has been done or produce evidence of a legitimate, nondiscriminatory reason for the decision. *Id*. It is sufficient if the employer's evidence raises a genuine issue of fact as to whether it discriminated against the employee. *Id*. " ' "If the defendant carries this burden of production, the

presumption raised by the prima facie case is rebutted" . . . and "drops from the case . . . ." ' " (Citation omitted.) *Agnew*, 256 Neb. at 402, 590 N.W.2d at 694, quoting *St. Mary's Honor Center, supra.*

Third, assuming the employer establishes an articulated nondiscriminatory reason for disparate treatment of an employee, the employee maintains the burden of proving that the stated reason was pretextual and not the true reason for the employer's decision; i.e., that the disparate treatment would not have occurred but for the employer's discriminatory reasons. *Lincoln County Sheriff's Office, supra.*

Most jurisdictions apply the above-described analysis to workers' compensation retaliatory discharge cases. See, e.g., *Gonzalez v. City of Minneapolis*, 267 F. Supp. 2d 1004 (D. Minn. 2003) (applying Minnesota law); *Provo v. Continental Eagle Corp.*, 650 So. 2d 881 (Ala. 1994); *Ford v. Blue Cross and Blue Shield*, 216 Conn. 40, 578 A.2d 1054 (1990); *Rebarchek v. Farmers Co-op. Elevator*, 272 Kan. 546, 35 P.3d 892 (2001); *Buckner v. General Motors Corp.*, 760 P.2d 803 (Okla. 1988); *Hinton v. Designer Ensembles, Inc.*, 343 S.C. 236, 540 S.E.2d 94 (2000); *La Tier v. Compaq Computer Corp.*, 123 S.W.3d 557 (Tex. App. 2003); *Wentworth v. Fletcher Allen Health Care*, 171 Vt. 614, 765 A.2d 456 (2000); *Wilmot v. Kaiser Aluminum*, 118 Wash. 2d 46, 821 P.2d 18 (1991); *Cardwell v. American Linen Supply*, 843 P.2d 596 (Wyo. 1992). See, generally, 3 Natl. Employment Lawyers Assn., Employee Rights Litigation: Pleading and Practice § 11.06 (Janice Goodman ed., 2005) (describing allocation of burdens of production and proof, and providing additional and contra authority).

Like the trial court in the present case, we will apply the burden-shifting analysis this court has utilized in employment discrimination actions to this case involving retaliatory discharge for filing a workers' compensation claim. Our conclusion, however, differs from that of the trial court.

## 2. ALLOCATION OF BURDENS

### (a) Riesen's Prima Facie Case

■ To establish a prima facie case of unlawful retaliation, an employee must show that he or she participated in a protected

activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected activity and the adverse employment action. *Fraternal Order of Police v. County of Douglas*, 270 Neb. 118, 699 N.W.2d 820 (2005). The burden of proof for a prima facie case of retaliatory discharge for filing a workers' compensation claim is on the employee. See 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 104.07[3] (2005). See, e.g., *Rebarchek, supra*; *Buckner, supra*.

In *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003), this court did not address what elements are necessary to establish a prima facie case for retaliatory discharge for filing a workers' compensation claim. In the present case, the trial court asserted that to demonstrate a prima facie case of retaliatory discharge for filing a workers' compensation claim, Riesen had to establish the following elements: (1) that he filed a workers' compensation claim, (2) that he was terminated from employment, and (3) that a causal link existed between the termination and the workers' compensation claim. The three elements utilized by the trial court fairly summarize the most common articulations of the prima facie case in such actions. See Jean C. Love, *Retaliatory Discharge for Filing a Workers' Compensation Claim: The Development of a Modern Tort Action*, 37 Hastings L.J. 551 (1986). See, also, *Webner v. Titan Distribution, Inc.*, 267 F.3d 828 (8th Cir. 2001) (applying Iowa law); *Gonzalez v. City of Minneapolis*, 267 F. Supp. 2d 1004 (D. Minn. 2003) (applying Minnesota law); *Hinton v. Designer Ensembles, Inc.*, 343 S.C. 236, 540 S.E.2d 94 (2000). Those elements also parallel this court's established elements for unlawful retaliation actions in general. See *Fraternal Order of Police, supra*. We find that the trial court's articulation of the elements of a prima facie case applicable to this case was correct.

There is no dispute that Riesen satisfied the first two elements of a prima facie case. First, Riesen established that he filed a workers' compensation claim arising from an injury sustained on May 8, 2001, in the course and scope of his employment. That claim, in fact, was being litigated when he was fired. Second, Riesen established that Irwin Industrial fired him on April 30, 2002.

The trial court found that Riesen had failed to establish a prima facie case of workers' compensation retaliatory discharge because he had not met the third element—a causal nexus. The court stated that "Riesen's evidence fail[ed] to establish that Irwin [Industrial] was motivated by retaliation . . . ."

"Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as its motive." 6 Larson & Larson, *supra* at 104-65. Accord, *Rebarchek v. Farmers Co-op. Elevator*, 272 Kan. 546, 35 P.3d 892 (2001); *Wilmot v. Kaiser Aluminum*, 118 Wash. 2d 46, 821 P.2d 18 (1991). One court has opined that

> [c]ircumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.

*Continental Coffee Products v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996).

Riesen injured his right shoulder at work on May 8, 2001. No dispute exists between the parties that Riesen had a valid workers' compensation claim as a result of that injury. Not only had he pursued his right to benefits, he had received substantial benefits and was seeking unknown future benefits. Riesen was fired on April 30, 2002, the same day on which Summers received Riesen's answers to interrogatories in the workers' compensation action.

In its brief, Irwin Industrial emphasizes that almost 1 year had elapsed between the date of Riesen's compensable injury and his termination of employment. Irwin Industrial argues that "[o]ne year is too long a time period to generate any inference of retaliatory intent based on temporal proximity." Replacement brief for appellee at 11. This argument ignores the fact that Riesen's claim was still pending. As such, the nature and extent of the injuries he claimed to have received had not yet been determined.

The record before us includes Riesen's answers to interrogatories, which Summers received on April 30, 2002, just prior to Riesen's dismissal. These answers show that Riesen and Irwin Industrial were in some sort of dispute over his right to recovery. They indicate that both parties were anticipating further litigation. In these answers, Riesen claimed that he had not reached maximum medical improvement and that he was reserving his right to claim benefits for vocational rehabilitation, further medical expenses, and temporary and permanent disability. This situation is clearly distinguishable from one in which a discharged employee had filed a workers' compensation claim that had been settled and satisfied without serious dispute.

■ "Proximity in time between the claim and discharge is a typical beginning point for proof of a causal connection." *Rebarchek v. Farmers Co-op. Elevator*, 272 Kan. 546, 555, 35 P.3d 892, 899 (2001). A plaintiff supports an assertion of retaliatory motive by demonstrating proximity in time between the workers' compensation claim and the firing, along with evidence of satisfactory work performance and supervisory evaluations. See 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 104.07[3] (2005). In the present case, Riesen had received several positive work performance reviews and pay increases from his employer. He was fired just 2 days after he notified Irwin Industrial's human resource department that after nearly 12 months of medical treatment and accompanying workers' compensation benefits, he needed more surgery on his shoulder. The temporal proximity of 2 days between Riesen's notice that he needed additional surgery and the termination of his employment, coupled with evidence of his satisfactory work performance, created a causal nexus sufficient to satisfy the third prima facie element.

In cases involving retaliatory discharge for filing a worker's compensation claim, a "claimant's 'prima facie case is not an onerous burden under the McDonnell Douglas burden-shifting scheme.'" See *Rebarchek*, 272 Kan. at 557, 35 P.3d at 901, quoting *Robinson v. Wilson Concrete Co.*, 913 F. Supp. 1476 (D. Kan. 1996). We conclude that Riesen met his burden of establishing a prima facie case of retaliatory discharge for filing a workers' compensation claim.

### (b) Irwin Industrial's Justification for Discharge

Irwin Industrial asserted that it had terminated Riesen's employment because he had misrepresented his past employment on his employment application. Thus, Irwin Industrial met its burden of production.

### (c) Pretext

Once Irwin Industrial successfully rebutted Riesen's prima facie case, Riesen was required to present evidence showing that the company's proffered explanation for firing Riesen was merely pretextual. The trial court found that Riesen's evidence had failed to establish that the company's justification was a pretext for a retaliatory motive. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005). Where reasonable minds differ as to whether an inference supporting the ultimate conclusion can be drawn, summary judgment should not be granted. *Sherrets, Smith v. MJ Optical, Inc.*, 259 Neb. 424, 610 N.W.2d 413 (2000). Therefore, we must address whether Riesen presented sufficient evidence to create a genuine issue of fact for the jury. In other words, could Riesen's evidence, when viewed in the light most favorable to him (the nonmoving party), create an inference in reasonable minds that Irwin Industrial had retaliatory motives for firing Riesen?

Riesen asserts that Summers seized upon the first opportunity to terminate Riesen's employment for what would appear to be a valid, nonretaliatory reason, but Riesen claims that Irwin Industrial's explanation was a pretext for retaliatory discharge. In employment law, a "pretext" has been described as " 'a reason that the employer offers for the action claimed to be discriminatory and that the court disbelieves, allowing an inference that the employer is trying to conceal a discriminatory reason for his action. . . .' " *Ryther v. KARE 11*, 108 F.3d 832, 837 n.4 (8th Cir. 1997).

In addition to the temporal proximity between Riesen's firing and his protected activity under the workers' compensation scheme, Riesen asserts other evidence to demonstrate a causal nexus and to show that Irwin Industrial's proffered reason was pretextual. For example, Summers had been the head of the

human resources department for approximately 6 years, but when deposed, he could not recall ever taking any other disciplinary action for a discrepancy between an employee's answers to interrogatories and that employee's personnel file. Although Summers stated it was the company's practice to terminate the employment of employees who misrepresent any information on their application, he had never before terminated the employment of an employee for that reason.

In *Reedy v. White Consol. Industries, Inc.*, 890 F. Supp. 1417 (N.D. Iowa 1995), a former employee claimed his employer fired him for seeking workers' compensation benefits. The employer said it fired the employee for misrepresentations on his job application and health forms. The federal district court found that a jury question existed as to the actual reason for the termination of employment. The court noted that the employee's evidence showed the employer had taken "no action to discipline him for any misrepresentations in his application and health forms until he actually appeared likely to run up medical bills and seek workers compensation benefits." See *id.* at 1434. Regarding this evidence, the court explained: "One implication of [such evidence] is that [the employer] decided to ignore those misrepresentations until health problems for which it might be required to pay manifested themselves." *Id.* The court continued:

> [A]nother implication of [the employer's] delay in terminating [the employee] until he actually appeared likely to require workers compensation benefits is that it was not until that time that [the employer] had any notice of [the employee's] misrepresentations of his health condition, and therefore no reason to invoke those misrepresentations as grounds for his discharge, and that [the employer] merely followed up on the warnings in both the application form and the health form which notified [the employee] that misrepresentations, or even omissions of fact, were grounds for dismissal. . . . [T]he real reason [for the discharge], [the employee's] misrepresentations or need for workers compensation benefits, is a fact question for the jury.

*Id.* at 1434 n.8.

In the case at bar, the employment application completed by Riesen instructed applicants to list "all present and past

employment" and to "[u]se a separate sheet of paper if necessary," but the application left room to list only three previous employers. Riesen listed only three previous employers on his application (although Riesen suggests that a separate page might have been lost from his personnel file). The record before us includes copies of other employees' job applications. Most of those applications include a listing of only three prior employers, with no addition of a separate page. Such evidence, Riesen claims, supports an inference that "Irwin [Industrial] itself does not consider the inclusion of all employers essential and material and thus, jumped at the first pretextual low-grade reason to terminate [him]." Brief for appellant at 22. '

██ "[T]he filing of a workers' compensation claim does not insulate the employee from the requirement that he or she abide by all personnel rules . . . . Such . . . personnel polic[ies] must be applied in a neutral fashion, however." 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 104.07[4] at 104-67 (2005). In *Rebarchek v. Farmers Co-op. Elevator*, 272 Kan. 546, 35 P.3d 892 (2001), the defendant-employer claimed that it fired the plaintiff because of poor job performance. The Kansas Supreme Court found that the plaintiff had "presented evidence that other . . . employees with somewhat similar performance deficiencies were not terminated." *Id.* at 558, 35 P.3d at 901. The court concluded that "[a]lthough [the plaintiff's] admittedly poor job performance supports [the employer's] position, we agree . . . that [the plaintiff] is entitled to test his case before a jury by virtue of his coming forward with evidence that raises genuine issues concerning [the employer's] motivation." *Id.*

Several statements allegedly made by Summers also tend to support an inference that Irwin Industrial's proffered reason for Riesen's firing was pretextual. Riesen claims that following a meeting between Summers and Riesen regarding Riesen's physical restrictions, he heard Summers exclaim, "[T]he little son of a bitch is faking and he only did this to get his raise." Approximately 2 months after his initial accident, Summers allegedly told Riesen that he would not sign an insurance form regarding Riesen's off-work status, that he had no work available for Riesen because of his one-arm restriction, and that "it would be a lot easier on all of [them] if [Riesen would] just quit."

Summers' statements, along with other evidence, could create an inference that Summers refused to sign the form in good conscience, but they could also tend to create an inference that he was upset with Riesen over Riesen's compensable injury.

Riesen further points to Summers' statement on April 30, 2002, as evidence of pretext. Riesen claims that on the date of the termination of his employment, Summers called him into Summers' office and told him, " 'You *finally* messed up . . . you lied on your *work comp* application.' " (Emphasis supplied.) Riesen asserts that, viewed in a light most favorable to him, the phrases "you finally messed up" and "work comp application" (as opposed to "employment application") create an inference that Summers was biding his time until he found a reason to terminate Riesen's employment and that the termination was actually in retaliation for Riesen's workers' compensation claim.

We need not decide whether the evidence offered by Riesen would be sufficient for him to prevail at trial. However, we conclude that Riesen's evidence, viewed in a light most favorable to him, created a genuine issue of fact as to whether the reason offered by Irwin Industrial for the termination of Riesen's employment was a pretext for an impermissible termination. Thus, the trial court erred in granting summary judgment for Irwin Industrial.

## VI. CONCLUSION

We conclude that Riesen established a prima facie case of retaliatory discharge for filing a workers' compensation claim. We also conclude that Riesen's evidence, viewed in a light most favorable to Riesen, created a genuine issue of fact as to whether the reasons offered by Irwin Industrial for the termination of Riesen's employment were a pretext for an impermissible termination. Accordingly, we reverse the trial court's order granting summary judgment for Irwin Industrial and remand the cause to that court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WRIGHT, J., not participating.