KING, Circuit Judge,
concurring in part and dissenting in part:
I respectfully disagree with the panel majority’s decision except its affirmance of the judgments in favor of plaintiffs Billy Harris and Lisa Jamison on their workers’ compensation retaliation claims. Indeed, I would fully affirm the district court, which carefully and capably adjudicated all of the retaliation and unpaid wages claims asserted herein.
With respect to the unpaid wages claims, the district court properly allowed a jury trial on whether defendant Columbia Farms violated the South Carolina Payment of Wages Act by, inter alia, providing written notice to employees that they would be paid based on “clock time,” while compensating them for only “line time.” See S.C.Code § 41-10-30(A) (requiring “[e]very employer [to] notify each employee in writing at the time of hiring of the normal hours and wages agreed upon,” as well as to make “[a]ny changes in these terms ... in writing at least seven calendar days before they become effective”); see also Carolina Alliance for Fair Emp’t v. S.C. Dep’t of Labor, Licensing, & Regulation, 337 S.C. 476, 523 S.E.2d 795, 803 (Ct.App.1999) (“The statute is a notice statute. It is intended to provide the employee with the information requisite to make an educated decision whether or not to accept employment.”). Significantly, the evidence was sufficient for the jury to find that — despite Columbia Farms’s practice of paying employees premised on “line time,” a practice permitted by but not elucidated in the collective bargaining agreement (the “CBA”) — each and every document provided to the plaintiffs indicated that their wages would instead be for “clock time.” The court thus correctly determined that the plaintiffs presented valid state law claims for recovery of unpaid wages. See Evans v. Taylor Made Sandwich Co., 337 S.C. 95, 522 S.E.2d 350, 352-53 (Ct.App.1999) (invoking section 41-10-30(A) in upholding a jury verdict and treble back wages award in favor of employees who “interpreted [a posted] document as Taylor Made’s promise to pay [them] 0.6133 cents per sandwich produced,” but who actually received “wages based on a per package rate, which may include one and a half or two sandwiches”), overruled on other grounds by Barron v. Labor Finders of S.C., 393 S.C. 609, 713 S.E.2d 634, 638 (2011).
The district court was also right to rule that the unpaid wages claims were not preempted by § 301 of the Labor Management Relations Act (the “LMRA”), 29 U.S.C. § 185. That is, resolution of the claims did not require interpretation of the CBA, which, again, was silent on the “line time”-“elock time” issue. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (explaining that § 301 preemption occurs when “the resolution of a state- *114 law claim depends upon the meaning of a collective-bargaining agreement”). Moreover, § 301 does not otherwise preempt “nonnegotiable rights conferred on individual employees as a matter of state law”— here, the right to written notice of their normal hours and wages. See Livadas v. Bradshaw, 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); see also Lingle, 486 U.S. at 409, 108 S.Ct. 1877 (observing that “ § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements”). Simply put, the CBA did not free Columbia Farms to disseminate misleading wage-and-hour notices or exempt it from the consequences of doing so.
As for the workers compensation retaliation claims, the district court properly entered judgments for eight plaintiffs — the two that we affirm today, plus the six that the panel majority reverses (those in favor of Natasha Atkinson, Anna Edens, Shiren Johnson, Shirley Baisey, Tamortha Brus-ter, and Steven Case). Those latter judgments also merit affirmance because the court heeded controlling principles of South Carolina law, including the following:
• “ ‘In order to prove a claim of workers’ compensation discrimination under South Carolina Code section 41-1-80, a plaintiff must establish three elements: (1) the institution of workers’ compensation proceedings, (2) discharge or demotion, and (3) a causal connection between the first two elements,’ ” Atkinson v. House of Roeford Farms, Inc., 874 F.Supp.2d 456, 475 (D.S.C.2012) (quoting Hinton v. Designer Ensembles, Inc., 343 S.C. 236, 540 S.E.2d 94, 97 (2000));
• “Proving a claim under section 41-1-80 does not require a formal filing of a workers’ compensation claim,” as “[t]he Supreme Court of South Carolina has held that conduct sufficient to be considered instituting a proceeding includes ‘the employer’s agreement to pay or payment of medical care or the employer’s receipt of written notice from an independent health care provider in the form of a bill for medical services rendered to an injured employee,’ ” id. (quoting Johnson v. J.P. Stevens & Co., 308 S.C. 116, 417 S.E.2d 527, 529 (1992)); and,
• “To establish causation under section 41-1-80, the employee must show that he would not have been discharged ‘but for’ the institution of the workers’ compensation claim” — a burden that the employee may satisfy “either by ‘persuading the court that the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer’s proffered explanation is unworthy of credence,’ ” id. at 475-76 (quoting Hinton, 540 S.E.2d at 97).
The district court sensibly predicted that the Supreme Court of South Carolina would add to Johnson’s non-exhaustive list of proceeding-instituting conduct “an employees seeking or receiving of medical treatment from the employer accompanied by circumstances which would lead the employer to infer that a workers’ compensation claim is likely to be filed.” See Atkinson, 874 F.Supp.2d at 475. Concomitantly, the court reasonably determined that the six plaintiffs instituted proceedings by seeking treatment from the Columbia Farms nurse’s office, requesting to see the company doctor, and ultimately resorting to private care for conditions regularly incurred in the workplace and typical of workers’ compensation claims— *115 those conditions being “sore hands”/carpal tunnel syndrome (Atkinson, Edens, Johnson, and Baisey), an injured and infected finger (Bruster), and injured hands (Case). As the court recognized, notwithstanding the company nurse’s professed beliefs “that carpal tunnel syndrome is [not] a work related injury” and that Bruster’s and Case’s injuries were sustained elsewhere, see id. at 462, 465, 467, the six plaintiffs had all expressly attributed their conditions to their labors at Columbia Farms.
Finally, the district court’s causation rulings were also legally and factually sound. The court concluded that the reason articulated by Columbia Farms for discharging Atkinson, Edens, and Johnson — that they failed to secure notes from their private physicians permitting them to return to work without restrictions — was unworthy of credence. In that regard, the court pointed to the company nurse’s testimony “that Columbia Farms generally made accommodations, such as fight duty, for employees with workers’ compensation injuries.” See Atkinson, 874 F.Supp.2d at 476-77 (explaining that “where an employer sets forth the employee’s inability to perform his job duties as the employer’s reason for terminating the employee, evidence that the employer had a policy of accommodating employees with workers’ compensation injuries, coupled with the employer’s failure to accommodate the plaintiff[,] may support that plaintiffs assertion that the employer’s proffered reason for termination was mere pretext”). The court further found that, in firing Baisey, Bruster, and Case, Columbia Farms pretextually invoked their excessive attendance points — points that they would not have accumulated but for the company nurse’s flimsy appraisal that they sustained their injuries outside the workplace. See, e.g., id. at 478 (“Although Baise/s employment at Columbia Farms included repetitive use of her hands, [the company nurse] independently determined that Baisey’s injury was not work related and refused to allow her to visit the company doctor for further assessment. As a result, Baisey received attendance points for the absences associated with her injury, and was terminated from employment.”).
Simply put, because I agree with its cogent analysis, I would affirm the district court across-the-board.