Natasha ATKINSON, Shirley Baisey, Calvin Barton, Jorge Catellanos, Quashonda Chapman, Shamika Cureton, Anna Edens, Billy Harris, LaToya Jamison, Lisa Jamison, Stacey Johnson, Terrance Johnson, Antonio Miller, Constance Neal, Kelly Pardue, Sherry Peralta, Pamela Vaughn and Pauline Warren, Plaintiffs,

v.

**HOUSE OF RAEFORD FARMS, INC. d/b/a Columbia Farms, Defendant.**

Samantha Earle and Shiren Johnson, Plaintiffs,

v.

House of Raeford Farms, Inc. d/b/a Columbia Farms, Defendant.

Jackie Bland, Tamortha Bruster, Myrtle Bryson, Antonio Burts, and Steven Case, Plaintiffs,

v.

House of Raeford Farms, Inc. d/b/a Columbia Farms, Defendant.

Civil Action Nos. 6:09–cv–01901–JMC, 6:09–cv–03137–JMC, 6:10–cv–00928–JMC.

United States District Court, D. South Carolina, Greenville Division.

June 15, 2012.

Lucy Clark Sanders, Nancy Bloodgood, Foster Law Firm, Daniel Island, SC, Robert P. Foster, Greenville, SC, for Plaintiffs.

M. Lee Daniels, Jr., Wimberly, Lawson, Daniels and Brandon, Greenville, SC, Brian Edlin, Henry W. Jones, Jr., Jordan, Price, Wall, Gray, Jones and Carlton, Raleigh, NC, J. Larry Stine, Paul Oliver, Wimberly, Lawson, Steckel, Schneider and Stine, Atlanta, GA, for Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

J. MICHELLE CHILDS, District Judge.

■ This matter is before the court following a bench trial.[1] Defendant House of Raeford Farms, Inc. d/b/a Columbia Farms ("Columbia Farms") is a chicken processing plant located in Greenville,

1. Civil Action No.: 6:09–cv–01901–JMC, 6:09–cv–03137–JMC, and 6:10–cv–00928– JMC were consolidated by order of the court.

South Carolina. Plaintiffs are a group of former employees of Columbia Farms. Plaintiffs brought an action against Columbia Farms in which certain individual Plaintiffs alleged that Columbia Farms committed retaliatory acts against them in response to Plaintiffs' assertion of workers' compensation claims, in violation of Section 41–1–80 of the South Carolina Code of Laws.[2]

Having considered the evidence presented to the court and arguments of counsel, the court issues the following Findings of Fact and Conclusions of Law. To the extent that any findings of fact constitute conclusions of law or vice versa, they shall be regarded as such.

## FINDINGS OF FACT

### Attendance Policy

1. The attendance policy in place at Columbia Farms at the time of Plaintiffs' employment, operated as a point system. Pursuant to the policy, an employee who was late arriving to work or returning to work after a break received half of a point. Employees who left work early also received half of a point. Employees who were absent from work on assigned Tuesdays, Wednesdays, Thursdays, or Fridays received a full point. Employees who were absent from work on assigned Mondays, Saturdays, or Sundays received one and one-half points. If an employee provided Columbia Farms with two days notice of an absence and provided a medical excuse for the absence, the employee received no points for the absence. If an employee did not provide two days notice for an absence, but provided a medical excuse for the absence, the employee received one point for the entire medically excused absence, even if the period of absence was longer than one day. An employee did not receive any points for workers' compensation injuries, absences, or approved doctor's visits when the employee visited the company doctor. If Columbia Farms sent an employee to the company doctor, the employee did not receive attendance points. When an employee worked for thirty days without receiving any new points, one point was deducted from the employee's point total. Employees who reached a total of five points were terminated from employment. Employees employed for six months were eligible to take a leave of absence for which no points would accumulate. The policy stated that employees who were absent for two consecutive days without notifying their supervisor would be terminated. Columbia Farms kept track of employees' attendance points on an "Absentee Calendar."

2. At the time of Plaintiffs' employment, Columbia Farms' company doctor was Exigent–Wade Hampton. Nurse Teresa Taylor ("Taylor"), an employee of Columbia Farms, generally determined whether to send an employee to the company doctor for medical treatment. Taylor testified that, as a licensed practical nurse, she is not qualified to diagnose carpal tunnel syndrome and is not permitted to diagnose medical conditions. Taylor also testified that she did not believe that carpal tunnel syndrome is a work related injury. Taylor did not send employees to visit the company doctor when she determined that their injuries were not work related. Taylor further testified that overuse of the hands on the production line constitutes sore hands, and she considers sore hands to be a matter of first aid. Columbia Farms did not complete workers' compensation forms for first-aid injuries.

---

**2.** A retaliatory discharge claim is an action in equity and is tried without a jury. *Hinton v.* *Designer Ensembles, Inc.*, 343 S.C. 236, 241, 540 S.E.2d 94, 96 (2000).

3. Taylor testified that employees with acknowledged workers' compensation injuries or restrictions received accommodation such as light duty, but those with injuries or restrictions that were not considered to be related to a workers' compensation injury were not permitted to return to work until the employee provided Columbia Farms with a doctor's note stating that the employee had no medical restrictions.

4. Tracy Hawkins ("Hawkins"), a former Columbia Farms employee who worked in the nurse's office at night, testified that Taylor kept a list of employees who frequently visited the nurse's office with injuries. Hawkins testified that employees were also added to the list if they went to a private doctor for medical care. Hawkins testified that Taylor would print the list and leave it in an envelope to be delivered to the third-shift supervisor. Joe Bunch, a shift manager at Columbia Farms testified that he received lists from the nurse's office of employees who had worked less than sixty days and had been to the nurse's office multiple times.[3] Hawkins testified that employees who were included on the lists of frequent visitors to the nurse's office were sometimes terminated from employment.

**Plaintiff Natasha Atkinson**

5. Plaintiff Natasha Atkinson ("Atkinson") began working for Columbia Farms in October 2008. Atkinson developed sore hands shortly after she began working at Columbia Farms. In February 2008, as treatment for her sore hands, Atkinson received gauze to use as hand splints from the Columbia Farms nurse's office. Atkinson testified that she asked to go to the company doctor, but Taylor refused to allow her to do so. On May 27, 2009, Atkinson went to the Greenville Free Medical Clinic where a doctor examined her swollen and painful hands. The doctor gave Atkinson a note to take to Columbia Farms which stated that she was to refrain from repetitive motion for two weeks. When Atkinson returned to work with the doctor's note, Taylor told her that she could not return to work until she provided Columbia Farms with a note that stated she had no work restrictions. Columbia Farms permitted Atkinson to take two weeks of unpaid medical leave to allow her hands to heal, but did not offer to provide medical care, light duty, or rotation to a different work position. During her medical leave, Atkinson obtained additional medical care from the Greenville Free Clinic and received splints on both of her hands.

Due to her injury, Atkinson was not able to obtain a doctor's note stating that she could work without restrictions. Atkinson returned to work on June 16, 2009 with splints on her hands. Atkinson's doctor had advised that she should wear the splints as needed. Atkinson worked for approximately two hours with the splints on her hands. When she visited the nurse's office later that day to submit her doctor's note, Taylor told Atkinson that she was not permitted to work with splints on her hands. Taylor told Atkinson to return to work on June 19, 2009. When

3. During the bench trial, the court held in abeyance its ruling on the admission of Plaintiffs' Exhibits 217–220, lists that Joe Bunch testified were examples of the lists that the nurse's office would provide to him containing the names of employees who had worked less than sixty days and had been to the nurse's office on multiple occasions. The court now admits these exhibits into evidence.

The court also held in abeyance its rulings on the admission of Plaintiffs' Exhibit 15, Columbia Farms' Americans with Disabilities Act Policy, and Defendant's Exhibit 1, Columbia Farms' Collective Bargaining Agreement. The court finds that Plaintiffs' Exhibit 15 and Defendant's Exhibit 1 are not relevant to the issues before the court and hereby declines to admit them into evidence.

Atkinson returned to Columbia Farms on June 19, Columbia Farms terminated Atkinson's employment, effective June 16, 2009, for her failure to provide a doctor's note stating that she could work without restrictions.

Atkinson filed a workers' compensation claim after her termination from employment. Atkinson's pay rate was $9.16 per hour at the time of her termination from employment. The court finds that Atkinson worked an average of forty-five hours per week, resulting in an average weekly pay of $412.20. Although actively looking for work, Atkinson remained unemployed for approximately fifty-nine weeks, until August 2010, when she acquired employment at a rate of $9.00 per hour at forty hours per week. Atkinson wishes to be reinstated to her former position at Columbia Farms.

### Plaintiff Shirley Baisey

6. Plaintiff Shirley Baisey ("Baisey") began working for Columbia Farms in October of 2008. On January 2, 2009, Baisey slipped and fell while working at Columbia Farms, resulting in injury to her back and knee. Columbia Farms sent Baisey to the company doctor for treatment and placed Baisey on light duty until February 16, 2009.

On March 9, 2009, Baisey experienced sore hands while working on the Columbia Farms production line. Baisey testified that her hands "went out on her." Baisey attempted to obtain treatment at the Columbia Farms nurse's office, but the nurse's office was unattended at that time. Baisey informed her supervisors that she had sustained an injury and intended to visit an emergency room when she finished her shift. Baisey visited an emergency room after her shift and received a note advising that she should be excused from work until March 13, 2009. Baisey returned to Columbia Farms on March 10, 2009 and gave the documentation of her

emergency room visit to Taylor. However, Taylor told Baisey that she needed to get a note from her private doctor. Baisey set up an appointment with Carolina Orthopaedic Center. Baisey returned to work on March 12 with a note from Carolina Orthopaedic Center which stated that Baisey was unable to work until March 17, 2009, upon the completion of nerve conduction studies. Baisey provided Columbia Farms with the doctor's note on March 12. Baisey asked to see the company doctor, but was refused. Taylor told Baisey that the injury was not work related. Baisey submitted additional notes from her doctor to Columbia Farms on March 24 and April 13. Baisey gave the notes excusing her from work to Taylor on the days that Baisey received them. Columbia Farms terminated Baisey's employment on March 20, 2009. Columbia Farm's stated reason for Baisey's termination from employment was that she had missed too many days without providing notes from a doctor.

Baisey filed a workers' compensation claim for her hand injury on July 7, 2009. At the time of her termination from employment, Baisey's pay rate was $8.91 per hour. The court finds that Baisey worked an average of forty-five hours per week, resulting in an average weekly pay of $400.95. Baisey remained unemployed for approximately two weeks before she secured new employment at a rate of $8.50 per hour at forty hours per week. Baisey later received a raise which brought her to a pay rate of $9.25 per hour. Baisey wishes to be reinstated to her former position at Columbia Farms.

### Plaintiff Jackie Bland

7. Plaintiff Jackie Bland ("Bland") began working for Columbia Farms on September 18, 2009. When Bland began working at Columbia Farms, he worked through a work-release program with the South Carolina Department of Corrections

("SCDC"). Bland was released from the SCDC in October of 2009. He continued to work for Columbia Farms after his release.

Shortly after he began working at Columbia Farms, Bland began experiencing pain in his left hand and reported the pain to his supervisor. When Bland continued to complain, his supervisor told him that if he kept complaining, he would call the work-release program to come and take him away from Columbia Farms. Bland also notified Taylor of the pain in his hand. Taylor rubbed his hands with a topical-pain reliever, wrapped them in cloth, and sent him back to the production line. Bland continued to report issues with his hands and visited the nurse's office frequently. However, Columbia Farms never sent Bland to the company doctor for treatment. Bland testified that on multiple occasions, Taylor told him that if he could not work, she would call the work-release program and have them come to get Bland.

On November 13, 2009, Bland called Taylor before his shift began and told her that his hands were hurting badly. Bland told Taylor that he was going to go to a doctor. Taylor told Bland to come to the plant before going to a doctor, but she did not offer to send Bland to the company doctor. Bland testified that Taylor told him that if he went to see a doctor, he should tell the doctor that his injury was not work related. Bland further testified that Taylor told him that if he went to a doctor, he would no longer have a job at Columbia Farms. Bland interpreted Taylor's statement as terminating his employment because he had already told Taylor that he had to see a doctor that day. Bland never returned to Columbia Farms. Before November 13, 2009, Bland had not accumulated any attendance points.

Columbia Farms terminated Bland's employment on November 23, 2009. Bland filed a workers' compensation claim on February 12, 2010. At the time of Bland's termination from employment, Bland's rate of pay was $9.16 per hour. Bland found temporary work for one and a half months at a rate of $9.50 per hour, he worked full-time at a construction company for some time, and at the time of trial, had recently begun employment at a rate of $12.00 per hour. Bland testified that he can perform the duties of his former job at Columbia Farms with the accommodation of being rotated to different positions and would like to have his old job back.

**Plaintiff Tamortha Bruster**

8. Plaintiff Tamortha Bruster ("Bruster") began working for Columbia Farms on December 5, 2008. While working on the production line, Bruster injured her finger by hitting it on a hard object. At the time of the injury, Bruster was wearing both cotton and rubber gloves. Bruster immediately informed a supervisor of the injury. The supervisor sent her to the nurse's office. Bruster's finger continued to hurt and Bruster went to the nurse's office to have her finger bandaged several times. As a result of the injury, Bruster's finger became swollen and her fingernail turned black, blue, yellow, and green. Taylor told Bruster that her finger was not infected. Taylor wrote in her nurse's notes, the notes that Taylor kept in the nurse's office regarding employees' visits to the office, that Bruster had a fungal infection from wearing false fingernails. However, Bruster denied having false fingernails. Bruster testified that she never wore false fingernails during the time she worked at Columbia Farms.

Eventually, Bruster went to an emergency room and received a pain reliever and antibiotics for treatment of her finger. Bruster testified that she may have been able to work light duty while her finger healed.

Bruster asked to see the company doctor, but was not permitted to do so. The day before Bruster's last day working at Columbia Farms, Hawkins told Bruster that her finger looked infected and that Taylor would take her to the company doctor the next day. Taylor did not take Bruster to the company doctor the next day. Rather, Taylor sent Bruster back to the production line. Bruster testified that her finger was hurting badly. After Bruster's shift, she went to an emergency room for treatment of her finger. The emergency room doctor prescribed more medication for Bruster's finger and gave Bruster an excuse to stay out of work the next day. The next day, Bruster did not report to work. Bruster testified that she provided Columbia Farms with the doctor's note the following day when she returned to work. When she returned to work that day, Columbia Farms informed Bruster that her employment was terminated due to excessive points. The Payroll Change Notice upon which Columbia Farms documented Bruster's termination from employment indicated that Bruster had voluntarily quit.

Bruster filed a workers' compensation claim after her employment with Columbia Farms ended. Columbia Farms terminated Bruster's employment on April 15, 2009. At the time of Bruster's termination from employment, her rate of pay was $9.51 per hour. The court finds that Bruster worked an average of forty-five hours per week, resulting in an average weekly pay of $427.95. From May 2009 to September 2009, Bruster received $139.00 per week in unemployment benefits. From September 2009 until being laid off in December 2009, Bruster was employed at a rate of $8.50 per hour. Bruster had an eight week gap in employment until she received subsequent employment at a rate of $11.00 per hour. At the time of trial, Bruster was employed and did not wish to leave her current employment to be reinstated to her former position at Columbia Farms.

**Plaintiff Antonio Burts**

9. Plaintiff Antonio Burts ("Burts") began working for Columbia Farms on March 6, 2009. Burts worked in the sanitation department at Columbia Farms. In March 2009, Burts sustained an injury while working at Columbia Farms. A pump that Burts was using exploded and sprayed Burts with sanitizing chemicals. The chemicals burned through his shirt and protective gear and burned his skin. Burts reported the injury to his supervisor who gave Burts a cream for the burns and told him to follow up with the company nurse. Burts visited Hawkins in the nurse's office, and she also gave Burts a cream for the burns. Burts reported to the nurse's office that his exposure to the chemicals was causing him to have trouble breathing. Burts requested to be sent to the company doctor, but was not permitted to do so. Burts continued having difficulty breathing, and his burns began to blister. As a result, Burts told the nurse's office that he was planning to go to an emergency room. The nurse told Burts that if he left work during his shift he would receive attendance points. Burts left work during his shift and visited an emergency room. The emergency room doctor gave Burts medicine to address his breathing problems, recommended medicine for the burns, and gave Burts a doctor's note releasing him from work. Burts called Columbia Farms approximately two days after going to the emergency room to say that he had a doctor's excuse advising that he remain out of work. Burts returned to work the day before his doctor's excuse dictated that he was to return to work, and was told that he should return on the following day because he was still under the doctor's care. Burts testified that when he returned to Columbia Farms

the next day, he was told that he had been absent too many days, and his employment was terminated. The Payroll Change Notice upon which Columbia Farms documented Burts's termination from employment indicated that Columbia farms terminated Burts's employment because he walked off of the job.

Burts filed a workers' compensation claim on January 21, 2010. At the time that Burts ceased employment with Columbia Farms, his pay rate was $8.47 per hour.

### Plaintiff Steven Case

10. Plaintiff Steven Case ("Case") began working for Columbia Farms on December 5, 2008. While working at Columbia Farms, Case sustained an injury to both of his hands. He sought medical care from the nurse's office on several occasions. In the nurse's office, Hawkins put a topical pain reliever on his hand, wrapped his hand, gave him ibuprofen for the swelling, and sent him back to the production line. Case asked to be sent to the company doctor, but Taylor refused and told him that he should go see his private doctor because she believed that he had injured his hands prior to working at Columbia Farms. Case testified that he had never had any hand injury or problems with his hands before he started working at Columbia Farms.

Case continued to complain about his hands. Columbia Farms sent Case home and told him not to return to work without a note from his private doctor stating that he was able to work without restrictions. Case sought medical care for his hands from his private doctor. The doctor advised Case to remain out of work for approximately two weeks and prescribed steroids to treat his hand. Case called Columbia Farms to notify the company that his doctor had advised that he stay out of work for two weeks and was told to bring his doctor's excuse when he re-

turned. The night before Case was to return to work, he called Columbia Farms, and the person in charge of attendance who handled the human resources paper work told him that he was on a termination list. Case never returned to work at Columbia Farms. Columbia Farms terminated Case's employment on May 6, 2009. After Case's employment with Columbia Farms ceased, he filed a workers' compensation claim related to the injury of his hands.

At the time of Case's termination from employment, his rate of pay was $9.56 per hour. The court finds that Case worked an average of forty-five hours per week, resulting in an average weekly pay of $430.20. From mid June 2009 until mid June 2010, Case collected $210.00 per week in unemployment benefits. Although searching for employment, Case remained unemployed until August 2010 when Case secured a job earning $10.00 per hour. Case does not wish to be reinstated to his former position at Columbia Farms.

### Plaintiff Samantha Earle

11. Plaintiff Samantha Earle ("Earle") began working for Columbia Farms on December 23, 2008. Earle never had problems with her hands or wrists before working for Columbia Farms. Earle's wrists began to hurt shortly after she began working at Columbia Farms. Earle reported the pain to her supervisor and went to Taylor for treatment. Taylor rubbed a topical pain reliever on Earle's hands and sent her back to the production line. Earle testified that the topical pain reliever did not help her hands. Earle went to the nurse's office every couple of days complaining of pain in her hands and wrists. Taylor provided the same topical pain reliever and, at one point, used hot wax to soak Earle's hands. Earle's supervisor told Earle that she was going to the nurse's office too often, that they were

keeping track of how many times an employee had been to the nurse's office, and that after a certain time employees were terminated from employment for visiting the nurse's office.

Earle requested to go to the company doctor, but Taylor refused. Earle sought medical care from her private doctor because Taylor would not send her to the company doctor despite Earle's requests. Earle's doctor diagnosed her with carpal tunnel syndrome and restricted her to light duty in relation to repetitive movement.

In October 2009, Earl fell off a platform near the production line at Columbia Farms and injured her arms and back. A few days after the incident, when Earle was reaching for a broom at home, she fell and aggravated the back injury she had suffered at work. Earle went to an emergency room and followed up with her personal doctor who instructed her to remain out of work for a period of time. As a result, Earle took a leave of absence from Columbia Farms.

On February 26, 2009, Earle received a verbal warning for refusing to score chicken tenders. Earle testified that, due to Earle's hand and wrist pain, Taylor had told her to rotate from the duty of scoring chicken tenders. Earle's supervisor told her that he would rotate her from scoring chicken tenders when he got another employee to cover for Earle. Earle refused to continue scoring tenders. On September 16, 2009, Earle received a verbal warning for failing to keep her work area clean. Also on September 16, 2009, Earl received a final written warning for going outside to use her telephone when her supervisor asked her to sign the previous disciplinary write-up that she received that day. As a result, she received a suspension of three days, pending an investigation of the incident. On October 5, 2009, Earle received a verbal warning for chewing gum while at work on the production line after another employee reported seeing her chewing gum. Earle testified that she was not the one chewing gum, rather it was the employee beside her on the production line. On October 21, 2009, Earle signed a final warning stating that she understood that she must work in any area in which the supervisor told her to work.

On November 27, 2009, Earle received a disciplinary write-up and suspension pending an investigation for failing to perform an assigned task and telling her supervisor to do the task instead. In addition, the disciplinary form alleged that when Earle was told to clock out of work, she called her supervisor a "punk." Earle denied calling her supervisor a "punk." Earle testified that her refusal to perform the assigned task arose from her dropping boxes because her hands were numb. Earle testified that her supervisor told the other employees not to help her because she could do the task herself. Columbia Farms terminated Earle's employment on December 2, 2009, for insubordination.

After her termination from employment, Earle filed a workers' compensation claim for her injury to her hands, arms and shoulder, and a separate workers' compensation claim for her back injury. At the time of the termination of her employment, Earle's pay rate was $8.91 per hour. Earle does not wish to return to work at Columbia Farms.

**Plaintiff Anna Edens**

12. Plaintiff Anna Edens ("Edens") began working at Columbia Farms on October 13, 2008. Edens first worked in the deboning department cutting chicken tenders, then she transferred to the box room for about three months. She eventually went back to working in the deboning department.

Approximately one month after she began working at Columbia Farms, Edens

began to have pain and numbness in her hands. Edens went to the nurse's office three times as a result of the pain in her hands. At the nurse's office, she received a topical pain reliever, a protective glove, and a hand massage.

On her third visit to the nurse's office, Taylor told Edens that she could not return to the nurse's office or continue working unless she provided a doctor's note stating that she could work without restrictions. Columbia Farms never offered to send Edens to the company doctor, but instead told her that she had to go to her private doctor. On the day after her third visit to the nurse's office, Edens went to a private doctor for care. Edens returned to work with a doctor's note stating that she could not work in cold or wet environments. Taylor and a supervisor told Edens that the note was not sufficient. Edens went back to the private doctor and asked for the note to be revised to only restrict her from working in cold environments. Edens returned to work with the second note and was told that she could not work for Columbia Farms if she had any work restrictions. Edens requested to be transferred to the evisceration department or the box room, where she had previously worked, two locations which Edens testified were not cold or wet. Both requests were denied. Taylor told Edens that she could not work at Columbia Farms. On April 5, 2009, Columbia Farms terminated her employment for failure to produce a note from her doctor that allowed her to work without restrictions. Edens filed a workers' compensation claim for her hand injury after her termination from employment.

At the time of Edens' termination from employment, her rate of pay was $8.91 per hour. The court finds that Edens worked an average of forty-five hours per week, resulting in an average weekly pay of $400.95. Columbia Farms terminated Edens' employment on April 5, 2009. Although she has been actively seeking employment since the time of her termination, Edens has been unsuccessful in acquiring new employment. Edens testified that she is able to return to work for Columbia Farms and would like to do so.

**Plaintiff Billy Harris**

13. Plaintiff Billy Harris ("Harris") began working for Columbia Farms on March 6, 2009. Harris worked at Columbia Farms through a work-release program with the SCDC. On June 22, 2009, Harris fell down the stairs while working at Columbia Farms and injured his back. Harris reported the accident to his supervisor. Harris continued to work on the production line after the accident, but as the day progressed, his back pain escalated. Harris went to a doctor through the SCDC. The SCDC told Harris that he needed to visit the Columbia Farms company doctor for treatment of his back. Harris went to the Columbia Farms company doctor on multiple occasions. Harris received x-rays, and the company doctor told Harris that he had no broken bones in his back. The doctor gave Harris medication for treatment of his injury. Initially, the doctor placed Harris on light duty from June 29, 2009, to July 6, 2009. When Harris visited the company doctor on July 6, the doctor extended his light duty. On July 14, Harris visited the company doctor again, at which time the doctor released Harris to full duty. The doctor told Harris that if his back started to hurt, he could get over-the-counter pain relievers from Taylor in the nurse's station. Taylor told Harris to come and see her immediately if his back began to hurt. Harris testified that he was still experiencing pain from his injury when the doctor released him to full duty.

While working full duty, Harris began experiencing pain in his back. Harris told

Tommy Campbell ("Campbell"), a lead person in production, that he needed to go see Taylor and go back to the doctor. Campbell told Harris to wait a minute. Harris waited for a minute and again told Campbell that he needed to go to the nurse's office. Campbell responded to Harris that he could go to the nurse's office, and Campbell and Harris walked outside of the room in which they had been. Harris began to take off his production gear. Campbell went back into the room in which he and Harris had been, and Harris proceeded to the nurse's office.

When Harris arrived at the nurse's office, Tom Donovan ("Donovan"), the Human Resources Manager at Columbia Farms, was waiting for him. Harris told Taylor that he needed to see a doctor. Taylor told Harris to go sit outside her office in the break room. Harris was then told that he had been terminated for walking away from the production line. Columbia Farms called the SCDC. The prison officials came and picked Harris up and took him back to the prison.

The prison officials told Harris to return to Columbia Farms the next day. When Harris arrived at Columbia Farms, he spoke with Donovan. Donovan asked Harris if he was feeling well enough to go back to work. Harris said that he needed to see a doctor. Then Donovan told Harris that he was terminated as of the previous day.

After Columbia Farms terminated Harris from employment, Columbia Farms sent Harris to the company doctor to be reexamined. The company doctor sent Harris to receive an MRI. Although Columbia Farms had already terminated Harris's employment, the doctor prescribed light duty for Harris until after the completion of the MRI. After his release from the SCDC, Harris moved to North Carolina because he no longer had a job in South Carolina.

Columbia Farms terminated Harris's employment on July 20, 2009. Harris filed a workers' compensation claim after Columbia Farms terminated his employment. At the time of his termination from employment, Harris worked at a rate of $9.16 per hour. The court finds that Harris worked an average of 45 hours per week, resulting in an average weekly pay of $412.20. After searching for new employment, in July 2010, Harris secured full-time employment with a pay rate of $14.15 per hour. Harris does not wish to be reinstated to his former position at Columbia Farms.

**Plaintiff Lisa Jamison**

14. Plaintiff Lisa Jamison ("Jamison") began working at Columbia Farms on April 7, 2009. On May 16, 2009, Jamison slipped and fell at work and injured her back, hip, neck, and shoulder. Jamison reported the fall to her supervisor, and her supervisor sent her to the nurse's station where she received an over-the-counter pain medication. Columbia Farms sent Jamison home for the day. Jamison went to see Taylor in the nurse's office the next day and received more pain medication. Taylor rotated Jamison to a different department in production. Jamison asked to go to the company doctor, but Taylor told her that she did not need to go to see a doctor because she was just sore and would get better. Jamison disagreed with Taylor and decided to go to her personal doctor. Jamison's personal doctor prescribed prescription pain relievers for treatment of her injury. When Jamison reported her personal doctor's findings to Taylor, Taylor sent Jamison to the company doctor. The Columbia Farms company doctor advised that Jamison should be placed on light duty until she was able to get an MRI. Columbia Farms placed Jamison on light duty, but she continued to experience pain. After her MRI, the com-

pany doctor extended the time period in which Jamison was to work light duty. Jamison testified that a supervisor at Columbia Farms told her that Taylor was going to get her fired because of her injury.

Jamison submitted to Columbia Farms notes from the company doctor setting forth her work restrictions and advising that she take frequent breaks from the use of her shoulder. Jamison understood her work restrictions to mean that when she began experiencing pain, she could walk around to loosen up or go to the nurse's station for treatment. Taylor called the company doctor in Jamison's presence to verify that Jamison could take breaks as needed.

On June 2, 2009, Donovan found Jamison outside of her assigned work area on three occasions. Jamison testified that each time Donovan saw her, she was on her way back from the nurse's office. On the final occasion, Jamison stated that Taylor had called her to the nurse's office to discuss her scheduled visit to the company doctor. Taylor asked Jamison if she needed transportation to the doctor. Jamison told Taylor that she could arrange transportation. When Donovan encountered Jamison, she was on the way back to her work area from the nurse's office and calling her transportation to pick her up and take her to her doctor's appointment with the company doctor that day. After the final occasion that Donovan found Jamison outside of her work area, he terminated Jamison's employment, stating that she had taken excessive breaks. Columbia Farms terminated Jamison's employment on June 2, 2009.

After Jamison's termination, she began collecting social security disability payments for a disability unrelated to her work at Columbia Farms. At trial Jamison testified that, after her discharge from Columbia Farms, she did not look for an-

other job. Jamison later testified that she believed that she was able to work after her termination from employment at Columbia Farms, but did not look for a job. Finally, Jamison testified that she might have applied for a job or two via the internet, but she was not successful in finding employment. Jamison wishes to be reinstated to her former position at Columbia Farms.

Jamison was a probationary employee at the time Columbia Farms terminated her employment. Jamison has been drawing social security benefits based on total disability since November 2009, including retroactive payments. Jamison began the process of applying for social security disability benefits three years before she was finally approved, which was before she applied for work at Columbia Farms.

Jamison filed a workers' compensation claim on May 22, 2009. Columbia Farms terminated Jamison's employment on June 2, 2009. Jamison testified that she is physically able to return to work at Columbia Farms and would like to do so. At the time of Jamison's termination from employment, her rate of pay was $8.41 per hour.

**Plaintiff Shiren Johnson**

15. Plaintiff Shiren Johnson ("Shiren") began working for Columbia Farms on May 19, 2009. On June 2, 2009, Shiren complained of pain in her eyes caused by chemicals used at Columbia Farms. Columbia Farms sent Shiren home for the rest of the day and assigned her half an attendance point. Shiren complained of pain in her right hand on June 10 and 12, 2009. Shiren visited the nurse's office for treatment of her hand. In the nurse's office, someone applied cream to Shiren's hand and wrapped it with tape. On June 11, 2009, Columbia Farms disciplined Shiren for dropping scissors while working. Shiren stated that she dropped the scis-

sors because of the pain and swollen condition of her hand.

Shiren went to an emergency room on June 15, 2009, because of the pain in her right hand. Before going to the emergency room, Shiren called Columbia Farms to let them know that she would be going. The emergency room doctor diagnosed Shiren with carpal tunnel syndrome and told her to follow up with the Columbia Farms company doctor or a free clinic. The emergency room doctor also gave Shiren a work excuse for the day. Shiren submitted the paperwork that she received from the doctor to Columbia Farms. Columbia Farms did not excuse Shiren from work for her absence on June 15. Shiren received one and one-half attendance points for the absence.

Taylor did not allow Shiren to visit the company doctor. Taylor told Shiren that she could not work with carpal tunnel syndrome and refused to let Shiren return to work until she could produce a doctor's note with no work restrictions. Due to her injury, Shiren was not able to provide a doctor's note allowing her to work with no restrictions; therefore, she was not able to return to work. Columbia Farms terminated Shiren's employment on June 23, 2009, after she did not report to work for two days.

After Columbia Farms terminated her employment, Shiren sought medical care from the Greenville Free Medical Clinic and the Hand Center, where her the diagnosis of carpal tunnel syndrome was confirmed. Shiren subsequently underwent surgery on her hand. Shiren filed a workers' compensation claim for her hand injury on November 17, 2009.

At the time of Shiren's termination from employment, her rate of pay was $8.76 per hour. The court finds that Shiren worked an average of forty-five hours per week. Shiren testified that she has not looked for new employment since her termination from employment at Columbia Farms. Shiren wishes to be reinstated to her former position at Columbia Farms.

**Plaintiff Stacey Johnson**

16. Plaintiff Stacey Johnson ("Stacey") began working at Columbia Farms on June 3, 2009. Stacey worked through a work-release program with the SCDC. Stacey worked in the sanitation department at Columbia Farms. On July 22, 2009, Stacey fell off of a ladder while cleaning a machine at work. He fell approximately ten feet.

Stacey reported the accident to his supervisor. Hawkins applied a topical pain reliever to Stacey's back and neck. Hawkins told Stacey not to report the accident and injuries to the SCDC officials. Columbia Farms sent Stacey to the company doctor the next day, July 23, 2009. The doctor placed Stacey on light duty. Stacey remained on light duty until his termination from employment at Columbia Farms.

As a result of the incident, Stacey received a disciplinary warning for having slick boots. Stacey testified that it was not his boots that caused the fall, rather the ladder shifted and caused him to lose his balance. He testified that he had gotten the boots just three days before the accident.

Stacey testified that Columbia Farms treated him differently the week following his accident. He noticed his supervisors staring at him, using a cell phone camera to take his picture, and talking about him, which had never occurred before his injury.

On August 10, 2009, Stacey's supervisor observed him working with his safety glasses pushed down on his nose. This was Stacey's second safety violation. As a result, Stacey received a disciplinary warning and a three day suspension pending an

investigation. Columbia Farms advised Stacey to return to the human resources department on August 13. However, on August 11, 2009, Patty Golightly from the work release program sent an email to Columbia Farms stating that Stacey was being removed from the work program effective that day and would not be returning to Columbia Farms. Stacey did not return to Columbia Farms after his suspension.

Stacey filed a workers' compensation claim after his termination from Columbia Farms. At the time his employment with Columbia Farms ceased, Stacey worked at a pay rate of $9.22 per hour. Stacey testified that he is physically able and would like to return to work at Columbia Farms.

**Plaintiff Terrance Johnson**

17. Plaintiff Terrance Johnson ("Terrance") began working for Columbia Farms on May 19, 2009. During his second week working at Columbia Farms, Terrance injured his back while working on the production line. Terrance complained to his supervisor about his back, and he went to the nurse's office where he received ice to apply to his back. Terrance requested to go to the company doctor, but was not allowed to do so.

On May 30, 2009, while sleeping before reporting to work, Terrance awoke in pain. Terrance called Hawkins and told her that he was going to visit an emergency room for treatment of his back. At the emergency room, x-rays were taken, and Terrance received pain medication. He also obtained a note from the doctor that instructed him to stay out of work for several days. The doctor provided Terrance with a medical excuse from work for that day. Terrance testified that he provided the note to Columbia Farms upon his return to work. Terrance received one and a half attendance points for his absence on May 30.

Terrance testified that the medication prescribed for his back made him feel woozy. As a result, he called Columbia Farms one evening to report that he would be late for work. Terrance testified that someone in the nurse's office told him that if he did not report to work that night, he would need an additional doctor's note when he returned to work the next day. Due to the effects of his pain medication, Terrance did not return to work that day. Terrance tried unsuccessfully to get a third medical excuse from his private physicians. During his attempt to get an additional medical excuse, Terrance missed three days of work. Terrance then called Taylor who told him that he did not need an additional medical excuse to return to work. Terrance reported to work for his next scheduled shift. When he arrived, his supervisors told him that he could work the shift, but he had four and a half points and would be terminated if he received any more points.

Terrance continued to take the medication that he had been proscribed for his back pain, and it continued to make him feel woozy. The following day, Terrance anticipated that he would be late for work because of the effects of the medicine. He called Columbia Farms, but was unable to reach anyone by telephone. While he was on the phone trying to call Columbia Farms, Terrance missed his ride to work. Terrance felt that he would receive half an attendance point if he arrived late, so he did not return to Columbia Farms.

Columbia Farms terminated Terrance's employment on June 17, 2009. At the time of the termination of his employment, Terrance's pay rate was $8.76 per hour. Terrance filed a workers' compensation claim on February 7, 2010. Terrance testified that he is able and would like to return to his job at Columbia Farms.

**Plaintiff Sherry Peralta**

18. Plaintiff Sherry Peralta ("Peralta") began working for Columbia Farms on November 6, 2008. On March 11, 2009, Peralta injured her finger while operating a chicken wing saw at Columbia Farms. As Peralta operated the saw, she conversed with another employee, and accidentally cut the tip of her finger off, although she was wearing metal mesh gloves. Peralta reported the injury, and Columbia Farms sent her to a hospital. After the injury, Columbia Farms placed Peralta on light duty.

Once her hand healed, Columbia Farms again assigned Peralta to operate the saw. On June 10, 2009, Peralta cut her left finger on the saw. Peralta testified that Columbia Farms had instructed her not to wear long fingernails while working because they could interfere with the proper fitting of her work gloves. However, Peralta testified that on the day of the incident she was wearing false fingernails that were approximately one inch long. Peralta denied that the length of her fingernails contributed to the incident. As a result of the second accident, Columbia Farms suspended Peralta for three days pending an investigation of the incident. When Peralta returned to Columbia Farms after her three day suspension, Columbia Farms informed her that her employment had been terminated for having two safety violations. Peralta testified that Columbia Farms informed her during employee orientation that having two safety violations could result in termination of employment.

After Peralta's termination from employment at Columbia Farms, she filed a workers' compensation claim for the injury to her finger. Peralta testified that she is physically able to return to work at Columbia Farms and would like to do so. At the time of her termination from employment, Peralta's pay rate was $9.01 per hour.

**Pamela Vaughn**

19. Plaintiff Pamela Vaughn ("Vaughn") began working for Columbia Farms on October 20, 2008. Vaughn injured her back while reaching for chickens at the top of a pile while working at Columbia Farms on February 20, 2009. At the time Vaughn injured her back, the nurse's office was unattended, so Vaughn went to Taylor for medical treatment the following day. At first, Taylor refused to allow Vaughn to visit the company doctor, but Taylor eventually agreed that Vaughn could do so. Taylor took Vaughn to the company doctor and spoke with the doctor before Vaughn was able to speak with him. The doctor advised that Vaughn was to work light duty from February 23 to March 2. On the trip back from the doctor, Taylor told Vaughn that there was no light duty available for her. Vaughn returned to work after her doctor's visit and did not receive a light duty accommodation. However, Taylor told Vaughn that during the time she was under the doctor's advisement to work light duty, she was not allowed to work more than forty hours per week. On Saturday, February 28, 2009, Columbia Farms assigned Vaughn to work, but Vaughn did not report to work because it would have put Vaughn over the forty-hour limit to which Taylor had instructed her to adhere while under the doctor's instructions to work only light duty. Vaughn received one and a half attendance points for not reporting to work that Saturday, which brought her total number of attendance points to five points.

Vaughn returned to regular duty on March 2, 2009, but she was still experiencing pain in her back. On March 5, 2009, Vaughn left work early. Vaughn received half an attendance point for leaving work early. On March 19, 2009, Vaughn did not report to work and received an additional

attendance point. Columbia Farms terminated Vaughn's employment effective March 27, 2009, for excessive attendance points.

At the time of her termination from employment, Vaughn was working at a pay rate of $8.91 per hour. She filed a workers' compensation form for her injury after her termination from employment. Vaughn testified that she is physically able and would like to return to work at Columbia Farms.

After Vaughn's employment with Columbia Farms ended, she went to work at a fast food restaurant on May 5, 2009, earning $7.25 per hour at approximately 12 to 15 hours per week. Vaughn did not look for full-time employment during that time.

## CONCLUSIONS OF LAW

1. Plaintiffs bring a claim for workers' compensation retaliation under section 41–1–80 of the South Carolina Code of Laws.

2. Under Section 41–1–80, "[n]o employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law. . . ." S.C.Code Ann. § 41–1–80 (2012).

3. Columbia Farms is an employer for purposes of Section 41–1–80 and was the employer of all Plaintiffs in this action.

█ 4. The employee bears the burden of proving a violation of Section 41–1–80. § 41–1–80.

█ 5. "In order to prove a claim under [section] 41–1–80, a plaintiff must establish three elements: (1) the institution of workers' compensation proceedings, (2) discharge or demotion, and (3) a causal connection between the first two elements." *Hinton v. Designer Ensembles, Inc.*, 343 S.C. 236, 242, 540 S.E.2d 94, 97

(2000) (citing *Hines v. United Parcel Service, Inc.*, 736 F.Supp. 675 (D.S.C.1990)).

█ 6. Proving a claim under section 41–1–80 does not require a formal filing of a workers' compensation claim. *Johnson v. J.P. Stevens & Co.*, 308 S.C. 116, 119, 417 S.E.2d 527, 529 (1992). "The purpose of [section 41–1–80] cannot be avoided by firing an injured employee before he or she files a claim." *Johnson v. J.P. Stevens & Co.*, 308 S.C. 116, 119, 417 S.E.2d 527, 529 (1992) (citing *Wright v. Fiber Industries, Inc.*, 60 N.C.App. 486, 299 S.E.2d 284 (1983)).

█ The Supreme Court of South Carolina has held that conduct sufficient to be considered instituting a proceeding includes "the employer's agreement to pay or payment of medical care or the employer's receipt of written notice from an independent health care provider in the form of a bill for medical services rendered to an injured employee." *Johnson*, 308 S.C. at 119, 417 S.E.2d at 529. However, the Supreme Court of South Carolina has not held that the preceding actions make up an exhaustive list of conduct sufficient to be considered as instituting a workers' compensation claim. This court holds that while the mere seeking and receiving of medical treatment is not sufficient to constitute the institution of a workers' compensation claim, an employee's seeking or receiving of medical treatment from the employer accompanied by circumstances which would lead the employer to infer that a workers' compensation claim is likely to be filed is sufficient to institute a workers' compensation proceeding for the purposes of Section 41–1–80. *See Buckner v. General Motors Corp.*, 760 P.2d 803, 811 (Okla.1988). Each case must be analyzed individually, and this court does not seek to delineate a single factor which would signify the institution of a proceeding. 7. To establish causation under section 41–1–

80, the employee must show that he would not have been discharged "but for" the institution of the workers' compensation claim. *Hinton*, 343 S.C. at 242, 540 S.E.2d at 97 (citing *Wallace v. Milliken & Co.*, 305 S.C. 118, 406 S.E.2d 358 (1991)).

8. A plaintiff may satisfy the burden of proof either by "persuading the court that the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Hinton*, 343 S.C. at 243, 540 S.E.2d at 97 (quoting *Wallace*, 305 S.C. at 122, 406 S.E.2d at 360).

9. "If the employer articulates a legitimate, non-retaliatory reason for the termination, the proximity in time between the work-related injury and the termination is not sufficient evidence to carry the employee's burden of proving a causal connection." *Hinton*, 343 S.C. at 243, 540 S.E.2d at 97.

10. An employer may assert certain affirmative defenses to a charge of workers' compensation retaliation, including the employee's "wilful or habitual tardiness or absence from work," "failure to meet established employer work standards," and "violating specific written company policy for which the action is a stated remedy of the violation." § 41–1–80.

11. While the employer has the burden of proving its affirmative defenses, "[t]he burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual." *Hinton*, 343 S.C. at 242–43, 540 S.E.2d at 97 (quoting *Wallace v. Milliken & Co.*, 305 S.C. at 122, 406 S.E.2d at 360).

12. "Section 41–1–80 does not singularly accord to an employee the right to a reasonable period of time for rehabilitation to demonstrate the ability to perform his former employment...." *Horn v. Davis Elec. Constructors, Inc.*, 307 S.C. 559, 564, 416 S.E.2d 634, 637 (1992).

13. Section 41–1–80 does not provide an employee with the right to a reasonable period of time to rehabilitate from an injury and demonstrate the ability to perform his job duties. However, where an employer sets forth the employee's inability to perform his job duties as the employer's reason for terminating the employee, evidence that the employer had a policy of accommodating employees with workers' compensation injuries, coupled with the employers' failure to accommodate the plaintiff may support that plaintiff's assertion that the employer's proffered reason for termination was mere pretext.

14. Section 41–1–80 provides, "[a]n employer who violates any provision of this section is liable in a civil action for lost wages suffered by an employee as a result of the violation, and an employee discharged or demoted in violation of this section is entitled to be reinstated to his former position." § 41–1–80.

15. "[L]ost wages consist of back pay, an equitable remedy in the nature of restitution, not legal damages." *Campbell v. Bi–Lo, Inc.*, 301 S.C. 448, 454, 392 S.E.2d 477, 480 (Ct.App.1990).

16. An award of back pay includes the amount the plaintiff would have earned if the retaliatory discharge had not occurred minus the plaintiff's interim earnings during the recovery period. *See* 45C Am.Jur.2d *Job Discrimination* § 2607. Courts have discretion to compute back pay in a manner that best compensates the victim of the discrimination for his or her financial loss. *See id.*

17. A wrongfully discharged employee may recover "only damages for

losses which, in the exercise of due diligence, he could not avoid." *Chastain v. Owens Carolina, Inc.*, 310 S.C. 417, 419–20, 426 S.E.2d 834, 835 (Ct.App.1993). The requirement that the employee mitigate his damages "permits the employee to recover the amount of his losses caused by the employer's breach reduced by the amount the employee obtains, or through reasonable diligence could have obtained, from other suitable employment." *Id.* A party who claims that damages should have been mitigated bears the burden of proving that they could reasonably have been reduced or avoided. *Id.* at 420, 426 S.E.2d at 835 (citing *Tri–Continental Leasing Corp. v. Stevens, Stevens & Thomas, P.A.*, 287 S.C. 338, 338 S.E.2d 343 (Ct.App.1985)).

 18. Reinstatement is an equitable remedy and subject to the discretion of the court. *See Horn*, 307 S.C. at 562, 416 S.E.2d at 635. Where a court determines that reinstatement is appropriate, it is within the court's discretion to impose conditions on the reinstatement. *Horn v. Davis Elec. Constructors, Inc.*, 312 S.C. 363, 366, 440 S.E.2d 398, 400 (Ct.App. 1994).

**Plaintiffs Natasha Atkinson, Anna Edens, Shiren Johnson**

 19. The court finds that Columbia Farms terminated Plaintiffs Atkinson, Edens, and Shiren's employment in violation of Section 41–1–80. Atkinson, Edens, and Shiren's receipt of treatment for their injuries from the nurse's office, combined with their requests to visit the company doctor or Taylor's representation to them that they had to see a private doctor, and their submission of documentation to Columbia Farms showing that they had sought medical care for their injuries is sufficient to constitute the institution of workers' compensation proceedings.

 Columbia Farms asserts that it terminated Atkinson, Edens, and Shiren's employment upon their failure to secure doctor's notes permitting them to return to work without restrictions. Upon carefully considering the evidence submitted in this case, the court finds that the termination of Atkinson, Edens, and Shiren's employment was causally related to their institution of workers' compensation claims. The court further finds Columbia Farms' articulated reason for terminating Atkinson, Edens, and Shiren's employment to be pretextual. In support of this finding, the court notes that although Atkinson, Edens, and Shiren each complained of pain in their hands, a complaint that the nurse's office commonly received from employees at Columbia Farms, Taylor refused to allow them to visit the company doctor. Taylor testified that Columbia Farms generally made accommodations, such as light duty, for employees with workers' compensation injuries. However, Atkinson, Edens, and Shiren did not receive such accommodation at the time of their termination from employment.

The court finds that Atkinson's total wages due, based on a recovery period that runs from the date of Atkinson's termination until the conclusion of the bench trial, equal $28,234.80. The court also finds that Atkinson is entitled to reinstatement of her former employment conditioned on her ability to perform the job.

The court finds that Edens' total wages due, based on a recovery period that runs from the date of Atkinson's termination until the conclusion of the bench trial, equal $55,331.10. The court also finds that Edens is entitled to reinstatement of her former employment conditioned on her ability to perform the job.

 Based on Shiren's testimony, the court finds that Shiren failed to mitigate her damages by diligently seeking new

employment after her discharge from Columbia Farms. Accordingly, Shiren is not entitled to lost wages. However, Shiren is entitled to reinstatement of her former employment conditioned on her ability to perform the job.

## Plaintiff Shirley Baisey

■ 20. The court finds that Columbia Farms terminated Plaintiff Baisey's employment in violation of Section 41–1–80. Baisey's notification of her supervisor of her injury combined with her request to visit the company doctor and her submission of documentation to Columbia Farms showing that she had sought medical care for her injuries is sufficient to constitute the institution of workers' compensation proceedings.

■ Columbia Farm's stated reason for Baisey's termination from employment was that she had missed too many days without providing notes from a doctor. Upon carefully considering the evidence submitted in this case, the court finds that the termination of Baisey's employment was causally related to her institution of a workers' compensation claim. The court further finds Columbia Farms' articulated reason for terminating Baisey's employment to be pretextual.

Although Baisey requested to visit the company doctor, Columbia Farms refused to allow Baisey to do so. According to the policy of Columbia Farms, an employee would not receive any points for workers' compensation injuries, absences, or approved doctor's visits when the employee visited the company doctor. Although Baisey's employment at Columbia Farms included repetitive use of her hands, Taylor independently determined that Baisey's injury was not work related and refused to

allow her to visit the company doctor for further assessment. As a result, Baisey received attendance points for the absences associated with her injury, and was terminated from employment. But for Taylor's refusal to allow Baisey to visit the company doctor, Baisey would not have accumulated excessive attendance points. The court finds that Columbia Farms terminated Baisey's employment in violation of Section 41–1–80. Baisey's total wages due equal $1,076.18.[4] The court also finds that Baisey is entitled to reinstatement of her former employment conditioned on her ability to perform the job.

## Plaintiff Jackie Bland

■ 21. The court finds that Columbia Farms' termination of Plaintiff Bland's employment was not in violation of Section 41–1–80. In order to establish a claim under Section 41–1–80, a plaintiff must show that he would not have been discharged but for the institution of a workers' compensation claim. However, Bland testified that he never returned to work after visiting the emergency room on November 13, 2009. The record indicates that Bland was aware of Columbia Farms' attendance policy. Bland had not yet accumulated any attendance points as of November 13, 2009, when he visited an emergency room for treatment of his hand injury. Therefore, receiving an attendance point for missing work on that day would not have resulted in a sufficient number of attendance points to qualify Bland for termination due to excessive attendance points. Bland testified that Taylor told him that if he went to the see a doctor on that day without first coming in to Columbia Farms, he would no longer have a job. Bland never attempted to

---

**4.** The court calculates Baisey's wages due based on a determination that Baisey's rate of pay increased to $9.25 per hour after one month of employment with her new employ-

er, upon which time Baisey's earnings exceeded that which she would have earned at Columbia Farms, and the period for which she was entitled to back pay ended.

contact his supervisor or anyone at Columbia Farms to see if he had been terminated from employment after his visit to the emergency room on November 13. The court finds that the cause of Bland's termination from employment was Bland's failure to return to Columbia Farms after his visit to the emergency room. Thus, Columbia Farms did not terminate Bland in violation of Section 41–1–80.

### Plaintiff Tamortha Bruster

■ 22. The court finds that Columbia Farms terminated Plaintiff Bruster's employment in violation of section 41–1–80. Bruster's receipt of treatment for her injuries from the nurse's office, combined with her requests to visit the company doctor, and her submission of documentation to Columbia Farms showing that she had sought medical care for her injuries is sufficient to constitute the institution of workers' compensation proceedings.

■ Upon carefully considering the evidence submitted in this case, the court finds that the termination of Bruster's employment was causally related to her institution of a workers' compensation claim. The court further finds Columbia Farms' articulated reason for terminating Bruster's employment to be pretextual. Although Bruster requested to visit the company doctor, Taylor refused to allow Bruster to do so. According to the policy of Columbia Farms, an employee would not receive any points for workers' compensation injuries, absences, or approved doctor's visits when the employee visited the company doctor. Taylor refused to allow her to visit the company doctor for treatment. As a result, Bruster sought medical care from an emergency room, received attendance points for the absences associated with her injury, and was termi-

nated from employment. Bruster believed she may have been able to continue working if she had been offered light duty. Taylor testified that Columbia Farms generally made accommodations, such as light duty, for employees with workers' compensation injuries; however, Columbia Farms did not offer Bruster the option of working light duty at the time of her termination. Thus the court finds that Columbia Farms terminated Bruster's employment in violation of Section 41–1–80. Bruster's total wages due equal $10,737.39.[5]

### Plaintiff Antonio Burts

■ 23. The court finds that Columbia Farms' termination of Burts's employment was not in violation of Section 41–1–80. Burts's notification of his supervisor of his injury combined with his request to visit the company doctor and his submission of documentation to Columbia Farms showing that he had sought medical care for his injuries is sufficient to constitute the institution of workers' compensation proceedings. However, Burts has failed to establish that he would not have been terminated but for the institution of a workers' compensation claim. The record indicates that Burts was aware of and signed a copy of the Columbia Farms Attendance Policy which stated that employees who were absent for two consecutive days without notifying their supervisor would be terminated. Burts testified that after he left Columbia Farms during his shift to go to the emergency room, he waited approximately two days before he called Columbia Farms to report that he had a doctor's note advising that he remain out of work. Furthermore, Burts did not provide the doctor's note to Columbia Farms until the

---

**5.** The court determines that the period for which Bruster was entitled to receive back pay ended upon her acquisition of employ-

ment at a rate that was equal to or exceeded that which she would have earned at Columbia Farms.

day before the doctor's note released him to return to work. Pursuant to the Attendance Policy, even if Burts's injury was work related, he was required to notify his supervisor that he would be out of work, and Burts did not do so for two days after visiting the emergency room. Thus, the court finds that Columbia Farms did not terminate Burts's employment in violation of Section 41–1–80.

### Plaintiff Steven Case

24. The court finds that Columbia Farms terminated Plaintiff Case's employment in violation of Section 41–1–80. Case's receipt of treatment for his injuries from the nurse's office, combined with his requests to visit the company doctor, and his notification to Columbia Farms showing that he had sought medical care for his injuries is sufficient to constitute the institution of workers' compensation proceedings.

Upon carefully considering the evidence submitted in this case, the court finds that the termination of Case's employment was causally related to his institution of a workers' compensation claim. The court further finds Columbia Farms' reason for the termination of Case's employment that was articulated on his Payroll Change Notice—that he quit by not returning to work with a doctor's note and had excessive attendance points—to be pretextual.

The description of Case's symptoms appears to be consistent with complaints that the nurse's office commonly received from employees at Columbia Farms. However, Taylor independently determined that Case's injury was not work related and refused to allow him to visit the company doctor for further assessment. As a result, Case sought medical care from his private doctor. To the extent that Case received attendance points for his absences, such points would not have accumulated if Taylor had allowed Case to visit the company doctor.

Furthermore, Columbia Farms informed Case that it had terminated his employment before he was able to return to work with his doctor's note releasing him from medical restrictions. Case chose not to return to Columbia Farms only after he learned through a conversation with an individual who handled attendance and human resources paperwork that Columbia Farms had terminated his employment. Case's accumulation of excessive attendance points was a result of Columbia Farms' refusal to allow Case to visit the company doctor for treatment of his injury. Thus the court finds that Columbia Farms terminated Case's employment in violation of Section 41–1–80. The court finds that Case's total wages due equal $15,752.40.[6]

### Plaintiff Samantha Earle

25. The court finds that Columbia Farms' termination of Earle's employment was not in violation of Section 41–1–80. In order to establish a claim under Section 41–1–80, a plaintiff must show that he would not have been discharged but for the institution of a workers' compensation claim. Columbia Farms articulated on Earle's Payroll Change Notice that the reason for Earle's termination was her insubordination.

Upon carefully considering the evidence submitted in this case, the court finds that Columbia Farms' articulated reason for the termination of Earle's employment is not pretextual. Earle sustained her first injury shortly after she

---

**6.** The court determines that the period for which Case was entitled to receive back pay ended upon his acquisition of employment at a rate that was equal to or exceeded that which he would have earned at Columbia Farms.

began working at Columbia Farms in December 2008. Earle later injured her back in October 2009. Earle worked at Columbia Farms for less than one year. She received five disciplinary warnings related to her performance—two of them final warnings—before her final disciplinary infraction on November 27, 2009. However, Columbia Farms did not terminate Earle until the sixth disciplinary infraction related to her performance. If Columbia Farms had intended to terminate Earle as a result of the institution of a workers' compensation claim, it had opportunity to do so before November 27. Accordingly, the court is persuaded that Columbia Farms did not terminate Earle's employment in violation of Section 41–1–80.

### Plaintiff Billy Harris

26. Columbia Farms' payment of Harris's medical care is sufficient to constitute Harris's institution of a workers' compensation claim. Upon carefully considering the evidence submitted in this case, the court finds that the termination of Harris's employment was causally related to his institution of a workers' compensation claim. The court further finds Columbia Farms' articulated reason for the termination of Case's employment—that he walked off of the production line—to be pretextual. Harris had instructions from the company doctor and Taylor to visit Taylor if he began experiencing pain from his injuries. Further, Campbell's behavior when Harris told him that he needed to go to the nurse's office indicates that Harris had permission to leave the production line.

Harris had been on light duty before the company doctor released him to return to full duty, and Harris did not indicate that he would not have been physically able to return to light duty, pursuant to any medical restrictions, if Columbia Farms had not terminated his employment. Furthermore, Taylor testified that Columbia Farms generally made accommodations, such as light duty, for employees with workers' compensation injuries. Thus the court finds that Columbia Farms terminated Harris's employment in violation of Section 41–1–80. The court finds that Harris's total wages due equal $20.610.00.[7]

### Plaintiff Lisa Jamison

27. The court finds that Columbia Farms terminated Plaintiff Jamison's employment in violation of Section 41–1–80. Jamison's receipt of treatment by Columbia Farms' company doctor is sufficient to constitute institution of a workers' compensation claim. Upon carefully considering the evidence submitted in this case, the court finds that the termination of Jamison's employment was causally related to her institution of a workers' compensation claim. The court further finds Columbia Farms' articulated reason for the termination of Jamison's employment—that she had taken excessive breaks—to be pretextual. The company doctor had advised and reiterated to Taylor that Jamison should take frequent breaks from the use of her shoulder. Further, at the times when Donovan encountered Jamison outside of her work area, she was returning from visiting the nurses office for discussions regarding her appointment to visit the company doctor that day. Jamison had discussed with Taylor that she would arrange transportation to her doctor's appointment and was doing so at the time of her final encounter with Donovan. The circumstances of Jamison's presence outside of her work area, combined with the fact that a supervisor at

---

**7.** The court determines that the period for which Harris was entitled to receive back pay ended upon his acquisition of employment at a rate that was equal to or exceeded that which he would have earned at Columbia Farms.

Columbia Farms indicated that Jamison would likely be terminated as a result of her injury, supports the causal relation between Jamison's injury and her termination from employment and persuades the court that the stated reason for the termination was pretextual.

Accordingly, the court finds that Jamison's termination from employment was in violation of Section 41–1–80. Based on Jamison's testimony, the court finds that Jamison failed to mitigate her damages by diligently seeking new employment after her discharge from Columbia Farms. Accordingly, Jamison is not entitled to lost wages. However, Jamison is entitled to reinstatement of her former employment conditioned on her ability to perform the job.

### Plaintiff Stacey Johnson

■ 28. The court finds that Columbia Farms' termination of Stacey's employment was not in violation of Section 41–1–80. In order to establish a claim under Section 41–1–80, a plaintiff must show that he would not have been discharged but for the institution of a workers' compensation claim. In Stacey's case, it was the work-release program that prohibited Stacey from returning to Columbia Farms after his suspension for not wearing his safety glasses ended. Thus, the work-release program, not Columbia Farms, ended Stacey's employment. Furthermore, while Stacey testified that he had seen other employees working without wearing their safety glasses, there is no indication that other employees were not disciplined for such behavior.

### Plaintiff Terrance Johnson

■ 29. The court finds that Columbia Farms' termination of Terrance's employment was not in violation of Section 41–1–80. In order to establish a claim under Section 41–1–80, a plaintiff must show a causal connection between his institution of a workers' compensation claim and his demotion or termination from employment. Terrance chose not to return to work at Columbia Farms after he anticipated that he would be late one evening. Terrance never returned to Columbia Farms. As a result, Columbia Farms terminated Terrance's employment. The court finds that the evidence does not support a finding that Terrance's termination from employment was causally related to his filing of a workers' compensation claim.

### Plaintiff Sherry Peralta

■ 30. The court finds that Columbia Farms' termination of Peralta's employment was not in violation of Section 41–1–80. To establish causation under Section 41–1–80, the employee must show that he would not have been discharged "but for" the institution of the workers' compensation claim. Columbia Farms advised Peralta during her employee orientation that committing two safety violations within one year may result in termination from employment. Peralta testified that the first safety violation was partly due to her having a conversation with another employee while operating a chicken wing saw. Peralta further testified that at the time of the second safety violation she was wearing false finger nails, although Columbia Farms had advised her that she was not permitted to do so while working because the fingernails could impair the proper fitting of her gloves. Upon carefully considering the evidence submitted in this case, the court finds that Columbia Farms' termination of Peralta's employment was not in violation of Section 41–1–80.

### Plaintiff Pamela Vaughn

■ 31. The court finds that Columbia Farms' termination of Vaughn's employment was not in violation of Section

41–1–80. To establish causation under Section 41–1–80, the employee must show that he would not have been discharged "but for" the institution of the workers' compensation claim. Vaughn received one and one-half attendance points for not reporting to work on a Saturday while she was under Taylor's instruction not to work over forty hours per week. Working the scheduled Saturday would have put Vaughn over the forty hour limit for the week. However, Columbia Farms did not terminate Vaughn after accumulating five points as a result of not reporting to work that day. Columbia Farms did not terminate Vaughn's employment until she accumulated an additional one and a half points for not reporting to work and leaving early on subsequent days. The Attendance Policy mandates that employees who accumulate five attendance points will be terminated from employment. Vaughn's subsequent absences do not appear to be related to her back injury. Thus, it appears that Vaughn would have accumulated five attendance points in spite of her work related injury. Accordingly, the court is not persuaded that Columbia Farms terminated Vaughn's employment in violation of Section 41–1–80.

### *CONCLUSION*

Based on the foregoing Findings of Fact and Conclusions of Law, the court finds and concludes that Defendant House of Raeford Farms, Inc. d/b/a Columbia Farms violated Section 41–1–80 in its termination of employment of Plaintiffs Natasha Atkinson, Anna Edens, Shiren Johnson, Shirley Baisey, Tamortha Bruster, Steven Case, Billy Harris, and Lisa Jamison. The court finds that a damages award in favor of Plaintiff Natasha Atkinson in the amount of $28,234.80, in favor of Plaintiff Anna Edens in the amount of $55,331.10, in favor of Shirley Baisey in the amount of $1,076.18, in favor of Tamortha Bruster in the amount of $10,737.39, in favor of Steven Case in the amount of $15,752.40, and in favor of Billy Harris in the amount of $20,610.00 is appropriate. The court further finds that Plaintiffs Shiren Johnson, Anna Edens, Natasha Atkinson, Shirley Baisey, and Lisa Jamison are entitled to reinstatement of their former employment conditioned upon their ability to perform. The court finds and concludes that Defendant House of Raeford Farms, Inc. d/b/a Columbia Farms did not violate Section 41–1–80 in its termination from employment of Plaintiffs Jackie Bland, Antonio Burts, Samantha Earle, Stacey Johnson, Terrance Johnson, Sherry Peralta, and Pamela Vaughn. The Clerk of Court is requested to enter judgment accordingly.

**IT IS SO ORDERED.**